In the Matter of DISANTO & MOORE ASSOCIATES, INC., Debtor.

Edward F. TOWERS, Trustee of the Chapter 7 Estate of Disanto & Moore Associates, Inc., Plaintiff and Appellee,

v.

Larry L. MOORE and Mary E. Moore, Defendants and Appellants.

Bankruptcy No. 3–83–00817 TLK. Civ. No. C–84–2791 SAW.

United States District Court, N.D. California.

Aug. 3, 1984.

---

936

Angell, Holmes & Lea, Barry D. Hovis, San Francisco, Cal., for defendants and appellants.

Merle C. Meyers, Goldberg, Stinnett & MacDonald, San Francisco, Cal., for plaintiff and appellee.

## MEMORANDUM AND ORDER
## OF REMAND

WEIGEL, District Judge.

This is an appeal pursuant to 28 U.S.C. § 1334(a) from a summary judgment rendered by the bankruptcy court in favor of plaintiff Edward F. Towers, trustee for the Chapter 7 estate of DiSanto & Moore Associates, Inc. ("DiSanto & Moore"). The court granted the trustee's prayer for a determination that appellants, Larry L. Moore and Mary E. Moore ("the Moores"), are not entitled to assert any security interest in assets of the debtor.

## BACKGROUND

On January 15, 1982, DiSanto & Moore entered into a written agreement with Wells Fargo Bank, N.A. ("Wells Fargo") whereby Wells Fargo made available to DiSanto & Moore an open line of credit in the amount of $50,000. By this agreement, DiSanto & Moore granted to Wells Fargo a security interest in all of DiSanto & Moore's accounts receivable, contract rights, instruments and general intangibles to secure repayment of all amounts borrowed pursuant to the line of credit. Wells Fargo properly perfected this security interest on January 18, 1982. DiSanto & Moore's obligations under the agreement were also personally guaranteed by the Moores, who are the parents of Gerald Moore, a 33⅓% stockholder in DiSanto & Moore.

DiSanto & Moore failed to make timely repayments of amounts borrowed as required by the January 15 agreement, and Wells Fargo began to press the corporation for payment. DiSanto & Moore asked the Moores for a loan of funds sufficient to enable the corporation to satisfy its outstanding obligations under the January 15 agreement. Following abortive attempts to reach a security agreement, the Moores on May 12, 1982 executed a check payable to DiSanto & Moore for $48,248.55, the exact balance then owing to Wells Fargo under the January 15, 1982 agreement.[1]

Neither party disputes the facts (1) that these funds were given for the express purpose of extinguishing the corporation's entire obligation under the January 15 agreement and (2) that the funds were so used.

To procure the funds so conveyed to DiSanto & Moore, the Moores borrowed from Wells Fargo $48,248.55 pursuant to a loan agreement secured by a deed of trust covering a house owned by the Moores. DiSanto & Moore agreed to make all payments due from the Moores in connection with this loan agreement. This obligation undertaken by DiSanto & Moore was not secured.

In January, 1983, DiSanto & Moore fell into arrears on the payments due to be made to Wells Fargo on behalf of the Moores. On January 11, 1983, Wells Fargo at the request of the Moores executed a written assignment to the Moores of "all of its right, title and interest in and under" the January 15, 1982 security agreement. Notice of this assignment was duly filed. The Moores subsequently foreclosed upon the security interest purportedly obtained by virtue of this assignment, and collected DiSanto & Moore accounts receivable totaling $9,187.24.

On April 15, 1983, DiSanto & Moore filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code. Edward F. Towers as trustee for the debtor then commenced this action, seeking a declaration that the Moores do not hold any valid security interest in DiSanto & Moore assets, and a judgment requiring the Moores to return to the estate all amounts realized as a result of their assertion of such a security interest.

The Moores, in response, contended that their asserted security interest should be upheld on one of two alternative theories. First, they argued, the January 11, 1983 assignment by Wells Fargo transferred to them an enforceable security interest in DiSanto & Moore accounts and other assets. Second, they contended that they are

---

**1.** Apparently by mistake, this instrument was dated "5/12/81."

entitled under principles of equity to· be subrogated to the rights of Wells Fargo secured under the January 15, 1982 agreement. The bankruptcy court rejected both of these contentions and entered summary judgment for the trustee. The Moores now appeal.

## ANALYSIS

1. *Assignment of the Security Interest.*

While a security interest may under appropriate circumstances pass by assignment, *see* Cal.Comm. Code § 9406(1); *Johnson v. Mortgage Guaranty Co.,* 117 Cal.App. 416, 422, 4 P.2d 208 (1931), a security interest has no existence independent of the obligation whose payment or performance it secures. *See* Cal.Comm. Code § 1201(37); *In re Belize Airways Ltd.,* 7 B.R. 604, 607 (Bankr.S.D.Fla.1980); *Van Diest Supply Co. v. Adrian State Bank,* 305 N.W.2d 342, 31 U.C.C.Rep.Serv. (Callaghan) 420, 426 (Minn.1981). Wells Fargo's security interest ceased to be effective on May 12, 1982, upon satisfaction of the entire debt owed by DiSanto & Moore. *See In re Sanelco,* 7 U.C.C.Rep. Serv. (Callaghan) 65, 70 (M.D.Fla.1969). The security interest could not later be transferred to secure a separate obligation owed by the debtor to another creditor such as the Moores. *See Belize Airways,* 7 B.R. at 606–07; *Van Diest,* 31 U.C.C.Rep. at 426; *Sanelco,* 7 U.C.C.Rep. at 70. The bankruptcy court was therefore correct in its conclusion that the Moores do not in their own right hold any valid security interest in DiSanto & Moore assets.[2]

2. *Equitable Subrogation.*

The Moores contend, however, that they were also entitled to secured status be-cause they are subrogated to the position of Wells Fargo, a secured creditor whose claim they extinguished by advancing funds to DiSanto & Moore.

Under California law, one who claims to be equitably subrogated to the rights of a secured creditor must satisfy five criteria. These are: (1) the subrogee must have made a payment to protect his own interest; (2) the subrogee must not have acted as a volunteer; (3) the payment must be used to satisfy a debt for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not work any injustice to the rights of others.[3] *Caito v. United California Bank,* 20 Cal.3d 694, 704, 576 P.2d 466, 471, 144 Cal.Rptr. 751, 756 (1978); *Grant v. De Otte,* 122 Cal.App.2d 724, 728, 265 P.2d 952, 955 (1954). Stated another way, the doctrine of equitable subrogation "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *Caito,* 20 Cal.3d at 704, 576 P.2d at 471, 144 Cal. Rptr. at 756; *Estate of Kemmerrer,* 114 Cal.App.2d 810, 814, 251 P.2d 345, 347 (1952).

The bankruptcy ˙court advanced four reasons for refusing the Moores' claim to subrogation. These reasons were: (1) the Moores made the payment used to satisfy Wells Fargo as "volunteers" and not as persons acting to protect their own interests; (2) subrogation might potentially work an injustice to the rights of other creditors; (3) the Moores waived any right to subrogation by seeking to obtain a se-

---

**2.** The Moores are correct in arguing that *if* a security interest passed to them under the January 11, 1983 assignment, that interest would have been perfected by Wells Fargo's prior filing and the notice of assignment. The trouble with the argument as to the facts here before the Court is that no security interest passed to the Moores under the January 11 assignment.

**3.** It is not a prerequisite for subrogation that the payment be made directly to the creditor whose claim was extinguished. Rather, it has been deemed sufficient that funds were advanced to the debtor for the purpose of satisfying the creditor's claim, and that the claim was in fact satisfied in its entirety. *See, e.g., Simon Newman Co. v. Fink,* 206 Cal. 143, 144, 273 P. 565 (1928); *French Lumber Co. v. Commercial Realty & Finance Co.,* 346 Mass. 716, 195 N.E.2d 507, 509 (1964).

curity interest by assignment; and (4) the claim to subrogation is barred in bankruptcy by 11 U.S.C. § 509(b). None of these reasons withstands close scrutiny.

The bankruptcy court concluded that the Moores acted as "volunteers" principally on the basis of deposition testimony given by Larry Moore. In the deposition, Moore recalled that

> In May of 1982, the bank was pressing DiSanto & Moore—for harder collateral than they had under the—I guess the Security Agreement and, one way of keeping the business going and viable was to give the bank a Second Deed of Trust on my house, so I obtained a Second Deed of Trust and turned the funds over to DiSanto & Moore, who in turn paid the funds to the bank.

From this testimony, the court found that even though the Moores were liable as sureties on the January 15, 1982 agreement, their "primary motive" in providing funds to satisfy the outstanding obligation under the agreement was to assist the corporation in which their son was one-third owner. As a consequence, the court reasoned, the Moores must be classified as "mere volunteers" not entitled to subrogation.

■ The court's analysis misconceives the nature of the requirement that a subrogee must have made a payment to protect his own interest and not as a volunteer. This rule applies to preclude subrogation where the putative subrogee, in satisfying a creditor's claim, pays a debt for which neither he nor his property is answerable and which he is under no obligation to pay. *Grant v. De Otte*, 122 Cal.App.2d at 729, 265 P.2d at 955; *see Guy v. Du Uprey*, 16 Cal. 196, 198 (1860); *Schlitz v. Thomas*, 61 Cal.App. 635, 638, 216 P. 51 (1923). In this case, the Moores did not stand in such a posture, because as guarantors of DiSanto & Moore's obligation under the January 15, 1982 agreement they were ultimately answerable for payment of the outstanding debt. As a matter of law, the payment by the Moores of this outstanding debt was made to "protect" their obligation as sure-

ty. *See, e.g., Estate of Kemmerrer*, 114 Cal.App.2d at 812–13, 251 P.2d at 347 (payment of funeral expenses and expenses of last illness not "voluntary", even if expenses incurred from humanitarian motives, if persons paying expenses would have been entitled to share in an estate chargeable with payment of such expenses).

The bankruptcy court also concluded that subrogation should be denied because it might lead to injustice for other creditors of the estate. The court observed that some of these creditors may have extended credit to DiSanto & Moore after May 12, 1982 while under the impression that DiSanto & Moore assets were not encumbered by any outstanding security interest. The court reasoned that although these creditors would have received notice of a potential security interest held by Wells Fargo had they checked the applicable state file, they might also have learned from Wells Fargo that there were then no debts outstanding secured by the collateral described in the financing statement. Because such creditors might not have extended credit to DiSanto & Moore had they known of the Moores' right to subrogation, the court further reasoned, it would risk injustice to allow such subrogation.

■ The bankruptcy court erred in granting summary judgment against the Moores on their claim to subrogation on this basis, without making any inquiry concerning whether there were any creditors actually prejudiced by subrogation in the manner hypothesized. The record does not show whether any creditors extended credit during the "gap" between May 12, 1982, when Wells Fargo's claim was extinguished, and April 15, 1983, when DiSanto & Moore filed for bankruptcy. Moreover, the financing statement filed by Wells Fargo on January 18, 1982 would have accorded the bank a security interest with priority superior to that of any "gap" creditor with respect to amounts advanced by Wells Fargo to DiSanto & Moore even after May 12, 1982. *See* Cal.Comm. Code § 9312(5), (7); *id.* Uniform Comm. Code Comment (exam-

ples 1, 4, 5 & comment 7). Subrogation of the Moores to the secured position of Wells Fargo does not work any injustice to these creditors in the absence of some further justifiable expectation on the part of the creditors. *Cf. French Lumber Co. v. Commercial Realty & Finance Co.*, 346 Mass. 716, 195 N.E.2d 507, 509 (subrogation did not work injustice to rights of creditor known to be subordinate to creditor to whose rights subrogee was to succeed).

Such a justifiable expectation might, for example, have arisen from an agreement by DiSanto & Moore to refrain from further borrowing from Wells Fargo. The record does not conclusively show the presence or absence of creditors whose justifiable expectations would be prejudiced by subrogation. Thus the summary judgment for the trustee cannot be sustained on this basis. Even if it should be determined on remand that some but not all creditors are prejudiced by subrogation, however, subrogation should not be denied entirely. Rather, the Moores should be permitted to exercise Wells Fargo's security interest as to any assets remaining after "prejudiced" creditors have been paid the *pro rata* share of the bankrupt estate they would have received in the absence of subrogation.

The bankruptcy court based its conclusion that the Moores waived any right to subrogation on the case of *Jack v. Wong Shee*, 33 Cal.App.2d 402, 92 P.2d 449 (1939). The court there ruled that when a party seeking subrogation has previously asserted an inconsistent legal theory, and thereby deprived other creditors of an opportunity to take steps necessary to protect their interest in the event of subrogation, the party may be said to have waived any right of subrogation it might have had. *Id.* at 412, 92 P.2d 449. The holding in *Jack* is thus a subset application of the rule that subrogation will be denied where it will work injustice to creditors. The record in this case does not conclusively show that any creditor suffered prejudice as a result of the failure of the Moores to more promptly assert a right of subrogation. Consequently the entry of summary judgment against the Moores may not be sustained on the basis of their attempt to obtain an assignment of Wells Fargo's security interest.

■ The final ground cited by the bankruptcy court for denying subrogation was 11 U.S.C. § 509(b), which provides that an "entity is not subrogated to the rights [of a creditor it has paid as surety] to the extent that ... a claim of such entity for reimbursement or contribution on account of a payment of such creditor's claim is allowed under section 502(a)(1)." This statutory provision does not bar the Moores' claim to subrogation. As the legislative statements accompanying the Bankruptcy Act of 1978 reveal, this section, in combination with 11 U.S.C. §§ 502(e) and 509(a), is intended to allow a surety or codebtor who pays a creditor's claim in full to elect between subrogation to the creditor's position and a direct claim for reimbursement against the estate. *See* 124 Cong.Rec. S 17406 (Oct. 6, 1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6505, 6518. The Bankruptcy Act thus does not preclude, but in fact acknowledges, the Moores' state law right to subrogation.

## CONCLUSION

The judgment of the bankruptcy court is reversed and the case is remanded for the purpose of further proceedings necessary to ascertain the extent, if any, to which other creditors of the estate would suffer prejudice as above defined if the Moores are subrogated to the rights of Wells Fargo. All such creditors shall participate in the estate to the same extent that they would participate if subrogation were not allowed. After provision is made for payment of these creditors, if any, the Moores shall be subrogated to the rights of Wells Fargo to treat DiSanto & Moore assets as security as provided in the agreement of January 15, 1982.

REVERSED and REMANDED.