**In re Jack R. MILLER, Jr., Individually and t/a Wunder Bar, Debtor.**

**Jack R. MILLER, Jr., Individually and t/a Wunder Bar, Movant,**

**v.**

**CONCORD–LIBERTY SAVINGS AND LOAN ASSOCIATION, Ann Silipigni, and Frank Suffoletta, Respondents.**

Bankruptcy No. 85–1000.
Motion No. 86–4175.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 8, 1987.

David W. Lampl, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for debtor.

Arnold M. Epstein, Brennan, Robins & Daley, Pittsburgh, Pa., for respondent Concord-Liberty.

Robert J. Masters, Hudacsek & Lewis, Beaver Falls, Pa., for respondents Silipigni and Suffoletta.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is the Debtor's *Motion To Determine Balance Owed To Concord-Liberty Savings And Loan Association* ("Concord"). The Court must determine whether co-Respondents, Ann Silipigni and Frank Suffoletta (hereinafter "Pledgors") are secured creditors, pursuant to both the doctrine of equitable subrogation, as codified in 11 U.S.C. § 509, and the Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. § 9101 *et seq.* Based upon the arguments offered at hearing, the briefs submitted thereon, and this Court's research, we find that Movant remains indebted to Concord for $33,000.00; further, we find that Pledgors possess a subordinated secured interest in the amount of $15,-000.00, which the Debtor-in-Possession cannot avoid pursuant to 11 U.S.C. § 544(a).

## FACTS

The Debtor and John R. Polyak were co-owners of property located in Midland,

Pennsylvania, which was purchased from Pledgors. Said purchase was effectuated by a mortgage of $55,000.00 granted to the Debtor and Polyak by Concord. Further security to Concord included a pledge of $15,000.00 from Pledgors, as evidenced by an Agreement dated August 25, 1976, which stated that Concord would hold the pledge, in the form of a "certificate of value", until the mortgage indebtedness was reduced to $40,000.00. Until the mortgage balance was so reduced, if a default occurred, the Agreement authorized Concord,

> ... to appropriate all or any part of the said certificate of value of $15,000.00 for the payment of the principal debt, interest and other charges due ...

The Agreement specified that foreclosure by Concord was not a condition precedent to its ability to appropriate the pledge.

In conjunction with the Pledge Agreement between Concord and Pledgors, a Consent Agreement dated August 25, 1976, was executed between Debtor and Pledgors. The Consent Agreement provided that:

> ... in case there should be a default on our part in the payment of said mortgage ... and it is necessary to hold the same [Pledgors] responsible for said delinquency to the extent of said Pledge, that [Concord] shall have the right to sell, assign, transfer and set over to [Pledgors] the aforementioned mortgage ... as may be expedient and necessary for the protection of [Pledgors].

Prior to both the Debtor's bankruptcy filing and the necessary reduction of the mortgage debt, Debtor failed to make the required payments, and accordingly, default occurred. Consequently, Concord applied the $15,000.00 pledge to the outstanding balance, reducing same to approximately $33,000.00.

Thereafter, on May 6, 1985, Debtor filed its voluntary Chapter 11 petition. Pursuant to an Order of this Court dated August 7, 1986, the subject real estate, along with Debtor's bar equipment, furniture and fixtures, was sold for the sum of $60,000.00.

Debtor has requested a determination of the balance owed to Concord, and in particular, whether Pledgors are deemed unsecured creditors, giving the Debtor-in-Possession, as hypothetical lien creditor, priority under § 544(a).

### ANALYSIS

The parties agree that § 509 of the Bankruptcy Code permits a co-debtor, guarantor, or surety who pays the debt, not as as volunteer, but because he is secondarily liable, to be subrogated to the creditor's rights to the extent of such payment.

The derivation of the equitable doctrine of subrogation has:

> ... its roots in the civil law, and applies to persons, such as sureties, who have paid a debt due to a third party for which another was primarily answerable, and who pays the debt not as a volunteer but because he is secondarily liable for the debt.

*See, U.S. v. Commonwealth of Pennsylvania Department of Highways*, 349 F.Supp. 1370 (E.D.Pa.1972); *In re Co-Build Companies, Inc.*, 21 B.R. 635 (Bankr.E.D.Pa. 1982), quoting *American Surety Company v. Bethlehem National Bank*, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241 (1941).

Although the majority of cases which discuss subrogation refer to guarantors rather than pledgors, the analysis regarding whether the Court should permit subrogation and the adjudication of the rights of the subrogee pursuant to the doctrine of subrogation remain constant. *See, In re Bugos*, 760 F.2d 731 (7th Cir.1985); *In re Blair Contracting Company, Inc.*, 21 B.R. 353 (Bankr.M.D.Fla.1982).

Case law indicates that once the right to subrogation is established, the subrogee becomes subrogated to all rights of the creditor against the principal debtor, including the security given to secure the debt. *Allen v. See*, 196 F.2d 608 (10th Cir.1952); *In re Blair, supra; In re Chasey*, 16 B.R. 347 (Bankr.W.D.N.Y.1982); *Sundheim v. Philadelphia School District*, 311 Pa. 90, 166 A. 365 (1933); *U.S. Steel Homes Credit Corporation v. South*

*Shore Development Corporation,* 277 Pa. Super. 308, 419 A.2d 785 (1980).

In the case at bar, Debtor argues that Pledgors are not secured because the Consent Agreement executed between Debtor and Pledgors was never publicly filed prior to Debtor's bankruptcy. Debtor views the Consent Agreement as, at best, a security agreement granting an interest in Debtor's real property, which was not perfected as mandated by the Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. §§ 9102(b) and 9302. Debtor argues therefore, that under § 544 of the Bankruptcy Code, the debtor-in-possession, as hypothetical lien creditor, takes priority over this unperfected security interest granted to Pledgors.

Assuming, *arguendo,* that Debtor's characterization of the Consent Agreement (as a security agreement) is correct, the Trustee's "strong-arm" powers under § 544, may well prevent Pledgors from assuming priority status, if foreclosure upon this security interest is their sole remedy. However, the plain language of the Consent Agreement indicates that the remedy contained therein, namely the transfer of Debtor's mortgage from Concord to Pledgors, is purely optional. It states that Concord has the *right* to transfer the mortgage to protect Pledgors, but not the *duty* to do so. Therefore, Pledgors are free to pursue other existing avenues to priority, one of which is subrogation under § 509 of the Bankruptcy Code.

Alternatively, assuming that Debtor's characterization is incorrect, and the Consent Agreement does not operate as a security agreement, Pledgors' subrogation remedy remains available. If the only relevant documents before us are the mortgage between Debtor and Concord, and the Pledge Agreement between Concord and Pledgors, the following analysis would apply:

> The bank was a secured creditor. He has a right to demand and receive from the trustee security, and, in the event of sale as here, the proceeds realized therefrom. When the guarantor stepped into the shoes of the bank by payment of the obligation, these rights were likewise his.

*In re Blair Contracting Company, Inc.,* 21 B.R. 353, 355 (Bankr.M.D.Fla.1982), quoting *Allen & See,* 196 F.2d 608, 610–11 (10th Cir.1952).

In fact, a transfer of the mortgage from Concord to Pledgors was never effectuated, and thus the Consent Agreement is largely irrelevant.

There is no question that Concord held a perfected security interest in the pledge of $15,000.00 given by Pledgors. Section 9305 of the Pennsylvania Uniform Commercial Code provides that a security interest in an instrument is perfected by possession of same. An instrument includes any "writing which evidences a right to the payment of money and is not itself a security agreement ...". 13 Pa.C.S.A. § 9105.

The Pledge Agreement provides that the collateral offered is a sum of $15,000.00 represented by a "certificate of value"; said certificate is held by Concord. Therefore, Concord is perfected in the Pledge Agreement by possession of the "certificate of value".

Although Concord was perfected in the pledge, Pledgors retained an interest in the collateral to the extent that its value exceeded Concord's secured debt, owed by the instant Debtor. *See* 13 Pa.C.S.A. § 9504(b); *In re Ewing,* 33 B.R. 288 (Bankr.W.D.Pa.1983). The facts indicate that Concord utilized the entire amount of the pledge to partially extinguish Debtor's mortgage debt, leaving no excess for which to account to Pledgors; their interest in the pledged collateral was thus extinguished.

Because the Pledgors were compelled to release the entire pledge to Concord upon Debtor's default, § 509 of the Bankruptcy Code dictates that they are subrogated to Concord's secured status to the extent of $15,000.00. Therefore, the Debtor-in-Possession cannot utilize its "strong-arm" powers under § 544(a) to avoid Pledgors' interest.

Finally, it should be noted that payment to the Pledgors may occur only after the claim of Concord is paid in full. This result is mandated by § 509(c), which requires

subordination of a subrogee to the primary creditor.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 8th day of April, 1987, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that Respondent Concord-Liberty is owed $33,000.00 on its secured interest and Respondents Silipigni and Suffoletta are owed $15,000.00 on their secured interest; said interest to be immediately subordinate to that of Concord-Liberty.