**In re SENSOR SYSTEMS, INC., Debtor.**

**Bankruptcy No. 83–03273S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 25, 1987.

---

**2.** We note, however, that the Debtors argued that the Movants have not filed Proofs of Claim

in these cases.

Kenneth E. Aaron, Ronnie Schwartz–Albright, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for present claimants.

Edward J. DiDonato, Philadelphia, Pa., for trustee.

William Schaps, Philadelphia, Pa., trustee.

Simon Jeffrey Rosen, Philadelphia, Pa., for claimant/Burton F. Drill.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant dispute arises on Objections of the Trustee, WILLIAM SCHAPS, to secured Proofs of Claim filed by sixteen individuals (hereinafter referred to as "the Claimants") totalling in excess of $625,000.00, in the instant Chapter 7 voluntary business bankruptcy.[1] The issue presented is whether the Claimants, having been required to pay in full, pre-petition, upon letters of credit issued by them on account of the Debtor in favor of a secured lender, may be subrogated to the rights of the secured lender as to claims filed by them in this bankruptcy. We hold that they are entitled to subrogation on the basis of 11 U.S.C. § 509(a) and that the Trustee's alternative effort to avoid their security interests on the basis of 11 U.S.C. § 544(a) is both time-barred by 11 U.S.C. § 546(a)(1) and lacking in substantive merit.

The instant case was filed on August 18, 1983, and the Trustee was appointed on the date of filing. The Proofs of Claim in issue all appear to have been filed on November 6, 1984. The case proceeded in deliberate fashion, with a relatively light volume of activity, until July 31, 1987, when the Trustee filed several Objections to Proofs of Claims, including an Objection the Claims in issue here. While no formal Answer to the Objection to their Claims was ever filed by the Claimants, their counsel made known to the Trustee their opposition to same, and, ultimately, on October 27, 1987, the instant Objection was scheduled for a hearing. At that time, opposing counsel presented us with a Stipulation of Facts which they agreed could constitute the record, and, by Order of October 27, 1987, the parties were accorded until November 10, 1987 (Trustee) and November 17, 1987 (Claimants) to file their Briefs supporting their respective positions. On November 19, 1987, we finally obtained a copy of the Claimants' Brief, a copy of which, contrary to our Order, was not forwarded directly to our chambers.

The Stipulation of Facts provides that, on May 20, 1982, Fidelity Bank (hereinafter referred to as "the Bank"), loaned $1,000,-000.00 to the Debtor. As security for this loan, the Bank not only obtained a duly-re-

---

1. One additional similarly-situated claimant represented by other counsel, Burton F. Drill, filed, *inter alia,* an identical claim in the amount of $84,000.00, to which the Trustee also filed an Objection. The parties to that matter, listed for disposition on December 2, 1987, agreed that it would in all probability be controlled by the outcome here.

corded security interest in virtually all of the Debtor's assets, but also required and received the Claimants' letters of credit in the Bank's favor. On January 5, 1983, the Bank increased the Debtor's line of credit to $1,300,000.00. The Debtor subsequently defaulted in making the loan repayments and, prior to the filing of the bankruptcy petition, the Bank drew on the letters of credit issued by the Claimants in the amounts of the Claimants' respective claims. The Trustee did not dispute the validity and amounts of the Claimants' respective claims, but did dispute their asserted right to be subrogated to the secured status of the Bank.

In his Brief, the Trustee acknowledges, as he must, the presence of 11 U.S.C. § 509(a), which provides as follows:

§ 509. Claims of codebtors.

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim is subrogated to the rights of such creditor to the extent of such payment.

However, he argues, on the basis of the following passage from 3 COLLIER ON BANKRUPTCY, ¶ 509.02, at 509–6 (15th ed. 1987), that § 509(a) does not apply here:

A partial discharge of the principal debt by the codebtor is clearly covered by section 509(a). Further, this is true whether the discharge is made prior or subsequent to the date of the filing of the petition. Section 509(a) also clearly applies to a codebtor who discharges the principal debt in full.[7] However, in the case of payment in full, section 509(a) applies only when such payment is made by the codebtor *after* commencement of the title 11 case.

If a codebtor discharges a debt in full *prior* to the filing of a petition, section 509(a) is inapplicable. As a rule, the rights of the creditors relate to the date of the filing of the petition.[8] If the debt has been fully discharged by the codebtor prior to the filing date, the original creditor is satisfied and, through subrogation outside of bankruptcy law, re-

placed by the codebtor. The latter is the only person able to qualify as a creditor on the filing date. The original creditor would not be entitled to prove a claim even if he wished to do so because none is owing. Since section 509(a) deals only with the sobrogation rights of a codebtor, it cannot very well be said to apply to a situation in which there is no creditor, other than the codebtor himself, entitled to the claim. A codebtor who has satisfied the creditor prior to the filing date of his principal's bankruptcy therefore proves his own claim, and section 509(a) has no application.

[7] *See In re Columbia Tobacco Co.*, 121 F.2d 641 (2d Cir.1941), *aff'g*, 38 F.Supp. 148 (E.D.N.Y.1941). *See also In re Zaepfel & Russell, Inc.*, 49 F.Supp. 709 (W.D.Ky.1941), *aff'd sub nom. Farmer's State Bank v. Jones*, 135 F.2d 215 (6th Cir.1943).

[8] *In re Burka*, 104 F. 326 (E.D.Mo.1900).

Then, asserting that resolution of the matter is controlled by applicable state law in the absence of overriding bankruptcy law, the Trustee argues that the Claimants' failure to establish that they filed any security interest or assignment, as purportedly is required by 13 Pa.C.S.A. § 9405, rendered their alleged secured status subject to attack by the Trustee pursuant to 11 U.S.C. § 544(a).

As can be observed from the passage quoted, the only authority cited by Collier in support of the conclusion that a full prepetition satisfaction of a claim against the debtor by a codebtor eliminates the application of § 509(a) is *In re Burka*, 104 F. 326 (E.D.Mo.1900). *Burka* involved a claim of an attorney who had performed services for a debtor post-petition. The court there held, interpreting the Bankruptcy Act of 1898 at a time when it was newer than the Bankruptcy Code of 1978 is today, that the debt to the attorney was not "provable" and hence no claim for it could be maintained in the bankruptcy because the claim did not exist on the date of the filing of the petition. *Id.* at 327.

It appears to us that the analogy between the *Burka* situation, which is dealt with by the present Bankruptcy Code under entirely different principles in 11 U.S.C.

§§ 327, 330, and a claim of subrogation pursuant to § 509(a), is very weak. The claims of the Claimants here not only existed, but whatever secured status they had was established, prior to the date of the bankruptcy filing, unlike the claim at issue in *Burka*. There seems to us no logical basis, nor any basis in the statute, to treat subrogation rights which arise as a result of a full pre-petition payment of a joint obligation by a co-obligor differently than those created by partial pre-petition payment. The only practical difference arising from a full pre-petition payment of the joint obligation by a co-obligor is that the original secured creditor would no longer remain a creditor of the debtor at the time of filing. Why this fact would or should be significant in determining subrogation rights of the co-obligor who makes the payment is totally unclear to us.

Our inability to perceive full pre-petition payment by a co-obligor claiming subrogation rights as a basis for holding § 509(a) inapplicable is shared by other courts. In *In re Bugos*, 760 F.2d 731, 734 n. 4 (7th Cir.1985), the Court of Appeals expressly states that "[t]he equitable principle of subrogation applies to the satisfaction of debts by a co-debtor prior to bankruptcy as well as to the post-petition satisfaction of debts." Among the decisions cited by *Bugos* as consistent with this principle are those of another Court of Appeals, *In re Missionary Baptist Foundation of America, Inc.*, 667 F.2d 1244, 1245–47 (5th Cir. 1982), and of former Chief Judge Emil F. Goldhaber of this court, *In re Alloway*, 37 B.R. 420, 423 (Bankr.E.D.Pa.1984). Numerous other cases, without expressly discussing the point, reach the same result. *See, e.g., In re N & D Properties, Inc.*, 54 B.R. 590, 599–600 (N.D.Ga.1985); *In re Zoglman*, 78 B.R. 213, 214–15 (Bankr.W.D. Wis.1987); *In re Miller*, 72 B.R. 352, 353– 54 (Bankr.W.D.Pa.1987); and *In re Parker*, 10 B.R. 562, 565 (Bankr.M.D.Ala.1981). On the other hand, we have located no cases at

all which support the reasoning of Collier, either expressly or by implication.

We therefore conclude that the Trustee's reliance on the accuracy of the status of the applicable law recited in the passage quoted from Collier is misplaced. We further believe that a party issuing a letter of credit in favor of another is logically characterized as a "guarantor" or a "codebtor." *See In re Guy C. Long, Inc.*, 74 B.R. 939, 942–44 & n. 6 (Bankr.E.D.Pa.1987). Therefore, the Claimants here appear to be clearly within the scope of the application of § 509(a) to "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor." Since the Claimants did pay off their co-obligation with the Debtor to the Bank, § 509(a) provides that they are entitled to be subrogated to the rights of the Bank as a secured party.

Assuming *arguendo* that the Trustee overcame the hurdle of the direct application of § 509(a) to the instant factual situation, we do not believe that he would be entitled to prevail in any event. As the Claimants appropriately argued in their Brief, the Trustee did not challenge their claim until almost three years after his appointment, and never invoked § 544(a) until the filing of his Brief. A proceeding under § 544 "may not be commenced after the earlier of—two years after appointment of the trustee" or the closing or dismissal of the case, 11 U.S.C. § 546(a), and hence the Trustee appears barred from raising the claim by the applicable statute of limitations.[2]

Furthermore, even assuming *arguendo* that the Trustee had proceeded to invoke § 544(a) in timely fashion, it does not appear that his contention that the Claimants were obliged to file an assignment of the Bank's secured claim to them to render their subrogation to the said secured claim valid as against the Trustee under state

---

**2.** Although a statute of limitations defense must generally be raised as an affirmative defense, *see In re Gurst, Gurst v. Philadelphia Consumer Discount Co.*, 79 B.R. 969, 980 (Bankr.E.D. Pa.1987), and the Claimants never filed *any* written Answer to the Objection to the claims, it

would have been impossible for the Claimants here to raise the limitations defense sooner than in their Brief because the Trustee did not specifically *invoke* § 544(a) until the preparation of *his* Brief.

law is correct, even if he were able to assume his hypothetical ideal-lien-creditor status. While 13 Pa.C.S.A. § 9405 *permits* an assignee of a secured interest to record an assignment, the Uniform Commercial Code elsewhere provides that "[i]f a secured party assigns a perfected security interest, no filing under this division is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor." 13 Pa.C.S.A. § 9302(b). *See also* Uniform Commercial Code Comment to § 9–405–1972 ("This section [13 Pa.C.S.A. § 9405] provides a *permissive* device whereby a secured party ... may have the assignment noted of record.... *[N]o filing of such an assignment is required as a condition of the continuing perfected status of the security interest ...*" (emphasis added). *See In re Farrier,* 61 B.R. 950, 954 (Bankr.W.D.Pa.1986). Thus, as the court held in *Miller, supra,* 72 B.R. at 354–55, we conclude that it is unavailing for the Trustee to argue that he can utilize his § 544(a) powers to attack the status of a party whose secured status is established by § 509(a) because of a failure to file the assignment of the claim.

Therefore, we conclude that the Claimants have established the validity of the secured status of their claims by a comfortable preponderance of evidence. *See In re Lewis,* 80 B.R. 39, 41 (Bankr.E.D.Pa.1987).

We shall therefore enter the following Order denying the Trustee's Objection to the claims in issue as filed. In addition, we are scheduling a status conference of this rather dated case on the same date as the hearing on the Objection of the similar claim of Burton F. Drill, i.e., December 2, 1987,[3] in order that we can stimulate the resolution of any other outstanding matters and possibly develop a schedule that will result in the closing of this case.

3. *See* page 624, n. 1 *supra.*