**In re TRASKS' CHAROLAIS, d/b/a Trask U + (U Cross) Ranch, d/b/a Trask Charolais Ranch, a South Dakota partnership, Debtor.**

**Bankruptcy No. 586–00015.**

United States Bankruptcy Court, D. South Dakota.

April 12, 1988.

---

Patrick Duffy, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S.D., for Milton Trask.

Jon Haverly, Small Business Admin., Sioux Falls, S.D., for SBA.

Haven L. Stuck, Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, S.D., for First Bank.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

This case is before the Court on Milton Trask's request for subrogation to the rights of the Estate of Bessie McDonald ("McDonald Estate") in a certain contract for deed, to the extent of payments made by Milton Trask to the McDonald Estate and to the county taxing authority. Bessie McDonald was the vendor of the contract for deed, to which the debtor, Trasks' Charolais Partnership, is a delegatee of the original vendee. Milton Trask asserted that he is secondarily liable as a guarantor of the contract.

Two intervening lienholders on the real estate opposed Milton Trask's request for subrogation. The Small Business Administration ("SBA") argued that Milton Trask is primarily liable on the contract, has elected his remedy by filing a proof of claim, has received consideration for his guaranty, and has waived all rights under "the contract" by assigning the contract to the Trasks' Charolais partners. The SBA also contended that if Milton Trask is entitled to subrogation, he is only entitled to interest at the rate specified in the contract for deed. The First Bank of South Dakota, N.A. ("First Bank"), asserted that Milton Trask no longer has any interest in the property and was a volunteer in making payments to the McDonald Estate.

On November 25, 1987, a hearing was held on Milton Trask's request for subrogation. The parties agreed that no factual dispute existed in this matter. In addition, they agreed that Milton Trask would be subrogated to the rights of the county taxing authority to recover for property taxes paid by Milton Trask. The Court then took under advisement the issue of whether Milton Trask is entitled to be subrogated to the rights of the secured creditor, the McDonald Estate.

*Facts*

On November 14, 1973, vendor Bessie McDonald and vendee Jim Ogle entered into a contract for deed covering certain real property located in Pennington County. The total contract selling price was $404,464.00, plus seven percent (7%) interest. Payments were to be made annually, on January 15. Contemporaneously with the execution of this contract, Baxter Berry and Milton Trask executed in favor of Bessie McDonald a "contract of guaranty" on the performance of the McDonald contract. Pursuant to this contract of guaranty, the guarantors received a fixed-price first option to purchase the real property in the event Ogle decided to sell. In addition, Berry's obligation on the contract of guaranty would remain in effect for five years or until Berry's death, whichever came first. Milton Trask was obligated as guarantor throughout the term of the contract.

On November 21, 1973, Ogle and his wife conveyed the property to Baxter Berry and Milton Trask by warranty deed. In 1976, the Estate of Baxter Berry assigned all its interest in the contract to Milton Trask. In 1977, Milton Trask assigned the contract for deed to Casey Trask, Tracy Trask, Todd Trask, and Anita Trask.

The debtor, Trasks' Charolais, is a partnership consisting of the four younger Trasks. The real property, which is the subject of the contract for deed, is the main asset of the partnership. Beginning in 1985, the younger Trasks failed to make the payments on the contract. The Trasks' Charolais Partnership eventually filed its

Chapter 11 bankruptcy on January 27, 1986.

When Trasks' Charolais Partnership failed to make contract payments when due, the McDonald Estate demanded payment of Milton Trask, as guarantor and assignee on the contract for deed. He made payments in 1985, 1986, and 1987 to the McDonald Estate and the county taxing authority. In September, 1987, Milton Trask executed a subordination agreement in favor of the McDonald Estate for the unpaid balance due under the contract for deed.

*Issue*

Whether Milton Trask is entitled to be subrogated to the rights of the McDonald Estate to the extent of payments made by him to the Estate on the contract for deed, if he is an assignor on the contract for deed and also executed a guaranty on the contract.

*Law*

This Court holds that Milton Trask is subrogated to the rights of the McDonald Estate to the extent of payments made by him on the contract. Milton Trask is entitled to subrogation based on his secondary liability as assignor on the contract for deed. His right to subrogation is junior to the claim of the McDonald Estate for the unpaid balance due, pursuant to the subordination agreement. *See also* 11 U.S.C. § 509(c). This holding is based on the following discussion.

11 U.S.C. § 509(a) states the general rule for the subrogation of claims of co-debtors, guarantors, and sureties in bankruptcy proceedings.[1] In general, the doctrine of subrogation applies in "every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been dis-

charged by the latter." *Application of Mach,* 71 S.D. 460, 465, 25 N.W.2d 881, 883 (1947); *see also Matter of DiSanto & Moore Assoc., Inc.,* 41 B.R. 935, 938 (N.D. Cal.1984).

■ One who claims to be subrogated to the rights of a creditor must satisfy five criteria:

1) Payment must have been made by the subrogee to protect his own interest.

2) The subrogee must not have acted as a volunteer.

3) The debt paid must be one for which the subrogee was not primarily liable.

4) The entire debt must have been paid.

5) Subrogation must not work any injustice to the rights of others.

*In re Flick,* 75 B.R. 204, 206 (Bankr.S.D. Cal.1987); *DiSanto & Moore,* 41 B.R. at 935; *see also Berendes v. Berendes,* 385 N.W.2d 119 (S.D.1985) (subrogee must not be a volunteer).

It is not necessary to determine whether Milton Trask is entitled to subrogation pursuant to the contract of guaranty. Milton Trask is entitled to be subrogated to the rights of the McDonald Estate to the extent of his contract for deed payments as an assignor on the contract for deed itself. Both the SBA and First Bank are incorrect when they allege that Milton Trask was a volunteer on the payments.

It is well-established that a contracting party cannot, by an assignment of the contract, relieve himself or herself of obligations thereunder. *Smith v. Wrehe,* 199 Neb. 753, 760, 261 N.W.2d 620, 625 (1978) (contract for sale of taxicab company); *Krueger v. Campbell,* 264 Mich. 449, 451–52, 250 N.W.285, 286 (1933) (contract for deed for sale of real property); *Restatement (Second) of Contracts* § 318(3) (1981). Even where the assignee expressly assumes the obligations delegated by the assignor, the assignor remains liable.[2] *Re-*

---

1. 11 U.S.C. § 509(a) provides:

   Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such

claim, is subrogated to the rights of such creditor to the extent of such payment.

2. "The term, 'delegate,' should be used in connection with performance, while the term, 'assign,' should be reserved for rights, though courts often fail to use these terms with preci-

*statement (Second) of Contracts* at § 318(3).

The assignor becomes a surety for the performance of the contract by the assignee. " '. . . [W]here one party to a contract, as part of the agreement, assumes an indebtedness owing by the other to a third person, the one assuming the indebtedness becoming the principal, and the former debtor a surety. . . .' " *Varga v. Woods*, 381 N.W.2d 247, 250 (S.D.1986), *quoting* 72 C.J.S. *Principal and Surety* § 40 at 532 (1951); *see also Krueger v. Campbell*, 264 Mich. at 452, 250 N.W. at 286. Thus, except where a party to the contract expressly agrees to accept the responsibility of the other party's assignee in place of that of the assignor, making a novation of the original contract, the assignor remains bound by his obligations under the contract and is liable if the assignee defaults. *Smith v. Wrehe*, 199 Neb. at 760, 261 N.W. 2d at 625.

Milton Trask clearly is not a volunteer and is entitled to be subrogated to the rights of the secured creditor, the McDonald Estate. When Jim and Retha Ogle conveyed their interest in the contract by warranty deed to Baxter Berry and Milton Trask, Milton Trask became an obligor on the contract for deed. The Berry Estate subsequently assigned its interest to Milton Trask. Milton Trask then assigned his interest in the contract to the younger Trasks. *See* Exhibit "E" to Milton Trask's Request for Subrogation. Therefore, Trask became an assignor on the McDonald contract for deed.

Under the assignment, the younger Trasks agreed to assume the duties and obligations of the contract. No evidence has been presented of a new contract executed by the younger Trasks, Milton Trask, and the McDonald Estate, whereby the McDonald Estate would agree to accept the responsibility of the younger Trasks in place of Milton Trask's performance.

Thus, Milton Trask remains liable on the contract as a "surety" for the performance of his assignees.

■ The prerequisites of subrogation are satisfied in this case. First, Milton Trask made the payments to protect his own interest as assignor and surety on the contract for deed, and not as a volunteer. *See* Exhibits "B," "C," "D," and "E" to Milton Trask's reply brief. Exhibit "B" is addressed to Milton Trask as guarantor and *assignee on the contract* (emphasis added). He may have had some motive in assisting his children. That motive, however, is irrelevant to a determination of his entitlement to subrogation, if Milton Trask was ultimately answerable for payment as a surety on the contract. *See DiSanto & Moore*, 41 B.R. at 939 (although the parents may have had some motive in assisting their son, they were not "volunteers," because they were guarantors on an obligation of their son's corporation).

Second, Milton Trask is not primarily liable on the contract. When he assigned his interest to the younger Trasks, he became a surety for their performance of the contract.

Third, Milton Trask has agreed to be subordinated to the McDonald Estate. *See* Exhibit "G" to Milton Trask's Request for Subrogation. Thus, Trask's right to payment is junior to the first lien claim of the McDonald Estate.[3]

Fourth, subrogation would not do any injustice to the rights of the lienholders. First Bank argued that Milton Trask has prolonged "this proceeding," and any equity in the contract has decreased by the accrual of interest on the contract and the SBA debt, and by the accrual of taxes. It claims it could have proceeded to foreclose and have realized its "equity."

These arguments are not persuasive. First, Trask made only one payment before

---

sion." E. Farnsworth, *Contracts* § 11.10 at 795 (1982). For purposes of this decision, this Court will use the terms, "assignor/assignee," although *the decision primarily concerns the delegation of performance.*

3. Even without the subordination agreement between Milton Trask and the McDonald Estate, payment to Milton Trask must occur only after the claim of the McDonald Estate is paid in full. *See* 11 U.S.C. § 509(c); *In re Miller*, 72 B.R. 352, 354 (Bankr.W.D.Pa.1987).

the debtor filed its bankruptcy petition. First Bank was prevented from foreclosing by the automatic stay, not by any payments made by Milton Trask. Second, the bank is in a no worse position than if Milton Trask had not made the 1985, 1986, and 1987 payments. The McDonald Estate would have been entitled to payment before the SBA or First Bank. Moreover, Milton Trask is subrogated only to those rights possessed by the McDonald Estate. *See In re James R. Corbitt Co.*, 62 B.R. 1017, 1022 (Bankr.E.D.Va.1986) (a fundamental tenet of the principle of subrogation is that a surety gains by subrogation to the rights of a creditor only those rights possessed by the creditor). Thus, Trask is entitled to subrogation only to the extent of the equity he infused into the contract and is limited to the rights of the McDonald Estate. Subrogation would not work any injustice to other creditors in this case.

The SBA contended that Milton Trask is not entitled to subrogation in any capacity. First, it alleged that he has elected his remedy in the Trasks' Charolais Partnership bankruptcy by filing a proof of claim. Subsection (b)(1) to Section 509 states two exceptions to the general rule of subrogation:

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

(1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—

(A) allowed under section 502 of this title;

(B) disallowed other than under section 502(e) of this title; or . . . .

11 U.S.C. § 509(b). Section 502(e)(1) provides in relevant part:

[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

. . . .

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

11 U.S.C. § 502(e)(1)(C).

Subsections (b)(1)(A) and (B) of Section 509 and Subsection (e)(1)(C) of Section 502 must be read together. When the co-debtor or other entity asserts a right of subrogation to the rights of the creditor under Section 509, that entity's claim for reimbursement or contribution is disallowed pursuant to Section 502(e)(1). 3 *Collier on Bankruptcy* ¶ 502.05[1] (15th ed. 1988). In sum, the co-debtor must elect between reimbursement and contribution by way of a claim allowable under Section 502(e) or by subrogation to the rights of the debtor's creditor under Section 509. *Id.; see also In re DuBose*, 22 B.R. 780, 782 (Bankr.N.D.Ohio 1982) (the co-debtor should only be allowed one recovery).

■ The SBA asserted that Milton Trask is not entitled to subrogation because he has filed a proof of claim in the Trasks' Charolais bankruptcy. In other words, the filing of a proof of claim would preclude the assertion of a right to subrogation. In his proof of claim, however, Milton Trask asserted a right of subrogation, as he did at the November hearing.[4] This Court will find that he has elected to be subrogated to the rights of the McDonald Estate.

The Court will disallow Milton Trask's proof of claim. Pursuant to Section 502(e)(1)(C), the Court must disallow a proof of claim for reimbursement or contribution if the entity has asserted a right to subrogation under Section 509. As a result of the disallowance of his claim, Milton Trask is left only with his right to subrogation under Section 509(a).

Pursuant to the discussion above, the exceptions to subrogation under Subsec-

---

**4.** A putative subrogee's previous assertion of an inconsistent legal theory, such as a proof of claim for reimbursement and contribution, could be construed as a possible ground for the denial of subrogation due to the injustice to other creditors. *See DiSanto & Moore*, 41 B.R. at 940. In this case, however, Milton Trask gave notice in his proof of claim that he intended to seek the right to subrogation. Therefore, no injustice was worked on other creditors by this supposed inconsistent legal theory.

tions (b)(1)(A) and (B) of Section 509 would not apply. First, the claim filed by Milton Trask was not allowed under Section 502. Second, his claim was disallowed under Section 502(e). Therefore, this situation does not fit into either exception to subrogation.

■ The SBA also argued that Milton Trask is not entitled to subrogation because he received a fixed-price option as part of the contract of guaranty. Subsection (b)(2) to Section 509 states that a co-debtor or other entity is not entitled to subrogation to the extent that, as between the debtor and such entity, such entity received the consideration for the claim held by such creditor. 11 U.S.C. § 509(b)(2). The statute looks at which entity, principal debtor or subrogee, received the consideration giving rise to the obligation. *In re Cooper,* 83 B.R. 544, 547, 1988 W.L. 18662 (Bankr.N.D.Ill.1988).

The SBA's contention fails for two reasons. First, its argument is moot because this Court holds that Milton Trask's right to subrogation is based on his suretyship as an assignor on the contract for deed, and not on any liability as a guarantor. Second, if this argument is considered in the context of his entitlement to subrogation as an assignor, Milton Trask no longer has any ownership interest in the real property which is the consideration for the underlying claim. Milton Trask thus did not receive the consideration giving rise to the debtor's obligation to the McDonald Estate.

In summary, Milton Trask possesses a subordinated security interest to the extent of the payments on the contract for deed.[5] As discussed above, the exceptions to statutory subrogation set out in 11 U.S.C. § 509(b) and (c) have been satisfied.[6] In addition, Milton Trask is entitled to interest at the contract rate of seven percent (7%). *See In re James R. Corbitt Co.,* 62 B.R. at 1022 (surety gains by subrogation only those rights possessed by the creditor).

The Court notes an error in the order entered by this Court on December 10, 1987, in this matter. The order stated that "[a]s guarantor under the contract for deed between the Debtor and the Bessie McDonald Estate, Milton Trask's right to recover said payments is now *identical* to the right of the taxing authority to recover said payments, had the aforementioned taxes remained unpaid" (emphasis added). The parties agreed that Milton Trask was entitled to be subrogated to the rights of the county taxing authority to the extent of payments made by him for taxes which had accrued, both pre-petition and post-petition, on the debtor's real property.[7] In certain instances, however, his right to subrogation may not be "identical" to the rights of the county.

■ As to taxes which accrued on the property of the debtor pre-petition, the county taxing authority would be entitled to a priority tax claim pursuant to 11 U.S.C. § 507(a)(7)(B).[8] 11 U.S.C. § 507(d), nevertheless, precludes Milton Trask from being subrogated to the county's priority

---

5. To the extent that the McDonald Estate would assert a secured claim against the debtor, Milton Trask may now assert that claim. *See In re Miller,* 72 B.R. at 353 (once a right to subrogation is established, the subrogee becomes subrogated to all rights of the creditor against the principal debtor, including the security given to secure the debt).

6. In this case, the exception stated in Subsection (b)(1)(C) of Section 509, concerning subordination pursuant to 11 U.S.C. § 510, was not addressed by the parties.

7. The information supplied to the Court indicates only when the tax payments were made by Milton Trask. No evidence is before the Court concerning when these taxes accrued. It is logi-

cal to assume, from the payment dates, that some taxes accrued before the case was commenced and some accrued after the petition was filed. *See* Affidavit in Support of Milton Trask's Request for Subrogation.

8. 11 U.S.C. § 507(a)(7)(B) states:
   (a) The following expenses and claims have priority in the following order:
   . . . .
   (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
   . . . .
   (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

status.[9] Milton Trask remains subrogated to the county's rights as an unsecured creditor. *See In re Spruill*, 78 B.R. 766, 769 (Bankr.E.D.N.C.1987); *In the Matter of Barefoot Sports, Inc.*, 61 B.R. 546, 549 (Bankr.W.D.Wis.1986). In addition, Milton Trask would be subrogated to the county's right to nondischargeability of the debt pursuant to 11 U.S.C. § 523(a)(1)(A). *See In re Cooper*, 83 B.R. at 548 (the fact that Section 507(d) denies the priority to the claim does not after [sic] the character of the claim and is wholly irrelevant to discharge); *In re Goldstein*, 66 B.R. 909, 920 (Bankr.W.D.Pa.1986); *In re Woerner*, 19 B.R. 708, 712 (Bankr.D.Kan.1982).

As to taxes which accrued on the property of the debtor post-petition, the county taxing authority would be entitled to a first priority administrative claim pursuant to 11 U.S.C. §§ 503(b)(1)(B)(i) and 507(a)(1).[10] Milton Trask would be entitled to be subrogated to the taxing authority's administrative claim status for the payment of these taxes. *See In re Spruill*, 78 B.R. at 773 n. 16 (11 U.S.C. § 507(d) is not applicable when the subrogated claim is for priority rights under Section 507(a)(1)).

This Court will not decide at this time to what priority and nondischargeability status Milton Trask may be subrogated for the payment of the property taxes. It does not have sufficient information to determine whether the taxes paid by Milton Trask accrued before or after the commencement of the Trasks' Charolais Partnership bankruptcy case. The parties also have not brought these questions before the Court. As a result, this Court will vacate only that portion of its December 10, 1987, order that entitled Milton Trask to rights "identical" to those of the county taxing authority. If necessary, the parties may bring before the Court the questions of whether the taxes paid by Milton Trask accrued pre-petition or post-petition and whether Milton Trask is entitled to priority status for the payment of any of the taxes.

Accordingly, the above and foregoing hereby constitutes the Court's findings of fact and conclusions of law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. In accordance with Bankr.R.P. 9021, counsel for Milton Trask is directed to submit an appropriate order reflecting the Court's determination that Milton Trask is entitled to be subrogated to the rights of the McDonald Estate to the extent of his payments on the contract for deed. Counsel for Milton Trask also is directed to submit an order reflecting the vacation of the previous order entered on December 10, 1987, stating that Milton Trask is entitled to be subrogated to the claim of the county taxing authority to the extent of tax payments made by Milton Trask, and stating that no determination has been made as to Milton Trask's right to be subrogated to the priority and nondischargeability status of the taxing authority.

---

**9.** 11 U.S.C. § 507(d) provides:

An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section *is not subrogated to the right of the* holder of such claim to priority under such subsection.

The reference to Subsection "(a)(6)" should be read as a reference to Subsection "(a)(7)." The 1984 Amendments to the Bankruptcy Code renumbered the tax priority of Section 507 from "(a)(6)" to "(a)(7)," but, due to a technical error, failed to revise the cross-reference to Section 507(a)(6) as contained in Section 507(d). *In re Spruill*, 78 B.R. 766, 769 n. 6 (Bankr.E.D.N.C. 1987), *citing In the Matter of Barefoot Sports, Inc.*, 61 B.R. 546, 548 n. 2 (Bankr.W.D.Wis. 1986).

**10.** Certain claims for pre-petition tax liabilities may not arise until after the commencement of the case, but are treated as if they arose pre-petition. 11 U.S.C. § 502(i); *see also In re Spruill*, 78 B.R. at 771. Thus, these claims are denied administrative status. *In re Spruill*, 78 B.R. at 771 n. 10.