In re William W. SPRUILL, SS#: 240–60–9391, Ellen T. Spruill, SS#: 207–26–6263, Debtors.

Bankruptcy No. 85–01926–SO5.

United States Bankruptcy Court, E.D. North Carolina.

Oct. 9, 1987.

Production Credit Association ("PCA") and the Federal Land Bank of Columbia ("Land Bank"). After proper notice, a hearing was held in Raleigh, North Carolina, on August 24, 1987. Both PCA and the Land Bank have filed claims for property taxes they paid to Franklin County, North Carolina, on property of the debtors after that property had been sold at foreclosure subsequent to the debtors' filing of their bankruptcy petition.[1]

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (B), which this court may hear and determine.

## FACTS

The relevant facts are essentially undisputed. The debtors filed their petition for relief under chapter 11 of the Bankruptcy Code on October 31, 1985. The debtors, who are farmers, owned farmland in Franklin County, North Carolina, which was subject to security interests held by both PCA and the Land Bank. The Land Bank and PCA both filed motions for relief from the automatic stay on January 7, 1986, and January 15, 1986, respectively. The Land Bank stated in its stay motion that it was owed $290,721.42 as of October 31, 1985, the date the debtors' bankruptcy petition was filed; PCA's motion stated that it was owed $153,209.92 as of that same date. A hearing was held on February 3, 1986, to consider the motions. At the hearing, the debtors offered evidence

Rebecca Glass, J. Larkin Pahl, Terri G. Bruce, Raleigh, N.C., for debtors.

Mark C. Kirby, John F. Logan, Raleigh, N.C., for Federal Land Bank and South Atlantic Production Credit Ass'n.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the objection filed on July 1, 1987, by the chapter 11 debtors to the claims of South Atlantic

---

**1.** At the time of the hearing held on August 24, 1987, only PCA had filed a claim for the taxes it had paid. At that hearing, the attorney for PCA, who also represents the Land Bank, announced that PCA would file an amended claim for additional taxes it had paid and that the Land Bank, which had not previously filed a claim for the taxes it had paid, would also file a claim. The court stated that it would allow these additional claims to be filed. Although PCA and the Land

Bank offered to present evidence with respect to the taxes they had paid, that evidence was never presented after the debtors stated that they had no dispute with respect to the amount of the payments that had been made. Because the legal issues with respect to the additional claims and the original claim filed by the PCA are essentially identical, the court will treat the debtors' objection to PCA's original claim as an objection to the additional claims as well.

to support their contention that the highest value for the real property could be realized through private sales. The debtors' strategy was to list the property with a realtor and to subdivide a portion of the land into "mini-farms." The Land Bank and PCA objected to that scheme, but ultimately entered into an agreement with the debtors to resolve the motions.

On February 26, 1986, a consent order, signed by the debtors and by the attorney for the Land Bank and PCA, was entered in this court which provided, among other things, that the automatic stay would be lifted without further order of the court if the debtors were unable to sell the property under terms specified by the Land Bank and PCA within a fixed period of time. The debtors were given the opportunity to attempt to sell some of the Franklin County land as "mini-farms." The consent order included a finding of fact that the debtors had no equity in the property. As it turned out, the debtors were unable to sell the property and foreclosure sales were held in June of 1986. PCA purchased nine tracts of the debtors' land for $157,-171.[2] Five of those tracts of land were purchased subject to a first deed of trust held by the Land Bank. The Land Bank subsequently foreclosed on its interest in the five tracts. The property was sold at foreclosure subject to unpaid property taxes.

After the foreclosures were completed, both PCA and the Land Bank made payments to Franklin County for taxes which had accrued, both prepetition and postpetition, on the property which was the subject of the foreclosure. The Land Bank's claim is for $1,001.35 for taxes it had paid which had accrued on the debtors' property in Franklin County in 1986 prior to the completion of the foreclosure proceedings.

PCA's claim is for a total of $6,657.02 and, according to its "Amended Proof of Claim and Request for Payment of Chapter 11 Administrative Expenses", is divided between prepetition and postpetition taxes as follows:

#### PREPETITION TAXES PAID BY PCA

| | |
|---|---|
| 1983 Deferred Taxes | $ 447.22 |
| 1984 Deferred Taxes | 443.55 |
| 1985 Deferred Taxes (pre 10/31/85) | 361.58 |
| 1985 Taxes (pre 10/31/85) | 3,189.16 |
| TOTAL | $4,441.51 |

#### POST-PETITION TAXES PAID BY PCA

| | |
|---|---|
| 1986 Taxes | $1,088.44 |
| 1986 Deferred Taxes | 400.52 |
| 1985 Taxes Post 10/31/85* | 652.56 |
| 1985 Deferred Taxes Post 10/31/85** | 73.99 |
| TOTAL | $2,215.51 |

\* Total 1985 taxes = $3,841.72 × 62/365 = $652.56
\*\* Total 1985 deferred taxes = $435.57 × 62/365 = $73.99

The debtors' plan was confirmed on May 11, 1987. The plan calls for the debtors to continue their farming operations. The class of unsecured claims, which is owed approximately $620,000, is to receive a total distribution of $20,000 to be divided *pro rata*. Aside from the taxes they paid which are at issue here, PCA and the Land Bank have unsecured deficiency claims of $33,561.51 and $7,221.42, respectively.[3]

It was not contended at the hearing held on August 24, 1987, that the debtors received any surplus proceeds from the foreclosure sales of their property. In view of the fact that both PCA and the Land Bank have asserted deficiency claims and in view of the finding contained in the consent order entered on February 26, 1986, that the debtors had no equity in the property in question, the court finds that, for purposes of 11 U.S.C. § 502(b)(3), the value of the estate's interest in the Franklin County property subject to the tax claims was zero.

2. *See* n. 3 for the basis of this finding as to the sale price.

3. The basis of this finding is the joint ballot filed by PCA and the Land Bank rejecting the debtors' plan together with the debtors' Second Amended Disclosure Statement. The rejection was a joint rejection reflecting combined unsecured claims totalling $40,782.93. This amount is the same as that set out on page 6 of the Second Amended Disclosure Statement filed on January 19, 1987, and approved by the court (after considering the objections to the disclosure statement filed by the Land Bank and PCA) on February 12, 1987. The calculation of the deficiencies in the disclosure statement includes a sales price of $157,171. It should be noted that the Land Bank and PCA did not file amended proofs of claim to establish their deficiency claims.

## DISCUSSION AND CONCLUSIONS

PCA contends it is entitled to an unsecured claim for the taxes it paid which accrued prepetition.[4] Both PCA and the Land Bank take the position that the postpetition taxes they paid are entitled to an administrative expense priority pursuant to 11 U.S.C. § 503(b)(1)(B)(i) and § 507(a)(1). The debtors argue that 11 U.S.C. § 502(b)(3) requires that all of these claims be disallowed. The court will first consider the objection with respect to the prepetition taxes and then with respect to the postpetition taxes.

### 1. Prepetition Taxes

PCA contends that Franklin County was entitled to a priority claim pursuant to 11 U.S.C. § 507(a)(7)(B) [5] for the taxes which accrued on the property of the debtors prepetition and which were paid by PCA. While PCA concedes that it is precluded by 11 U.S.C. § 507(d) [6] from being subrogated to Franklin County's § 507(a)(7)(B) priority rights, it maintains that it is nonetheless entitled to an unsecured claim for the prepetition taxes it paid. In support of its contention, PCA cites *In re R.O.A.M., Inc.*, 15 B.R. 616 (Bankr.D.Nev.1981), in which a subrogee who was denied priority status pursuant to § 507(d) was held to still be subrogated to the taxing authority's rights as an unsecured creditor. *See also Matter of Barefoot Sports, Inc.*, 61 B.R. 546, 549 (Bankr. W.D.Wis.1986).

The court agrees that § 507(d) does not prohibit a subrogee of a taxing authority from receiving a distribution as an unsecured creditor. However, this case is distinguishable from *R.O.A.M.* and *Barefoot Sports* because of the applicability to this case of 11 U.S.C. § 502(b)(3) which, when applicable, operates as a bar to the allowance of any claim, either priority or unsecured, for prepetition taxes. The relevant portions of 11 U.S.C. § 502 read as follows:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

. . . .

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property.

Relying on the language contained in § 502(b)(3),[7] courts have disallowed tax claims in their entirety when the property

---

**4.** PCA's priority proof of claim originally asked for priority status for all tax claims paid by PCA. The Amended Proof of Claim, however, does not claim priority status for prepetition taxes.

**5.** 11 U.S.C. § 507(a)(7)(B) reads as follows:

The following expenses and claims have priority in the following order:

. . . .

(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

. . . .

(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

**6.** 11 U.S.C. § 507(d) states:

An entity that is subrogated to the rights of a holder of a claim of a kind specified in sub-section (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

The reference to subsection "(a)(6)" should be read as a reference to subsection "(a)(7)". The 1984 amendments to the Bankruptcy Code renumbered the tax priority of section 507 from "(a)(6)" to "(a)(7)", but, due to a technical error, failed to revise the cross reference to § 507(a)(6) contained in § 507(d). "[I]t is obvious that Congress intends the section 507(a)(6) cross reference in section 507(d) to continue to refer to tax claims." *Matter of Barefoot Sports, Inc.*, 61 B.R. 546, 548 n. 2 (Bankr.W.D.Wis. 1986).

**7.** The 1984 amendments to the Bankruptcy Code renumbered what was formerly § 502(b)(4) as § 502(b)(3). The amendments left the language virtually unchanged. The cases cited in the paragraph in which this footnote appears all were applying § 502(b)(4).

subject to the tax had been repossessed prior to the filing of the bankruptcy petition, *In re Damar Machine, Inc.,* 30 B.R. 256 (Bankr.D.Me.1983), when it had been abandoned by the trustee subsequent to the bankruptcy filing, *In re Skinner Lumber Co.,* 35 B.R. 31 (Bankr.D.S.C.1983), and most on point with the facts of this case, when the property had been turned over to a secured creditor or sold at a foreclosure sale following the lifting of the automatic stay, *In re Transco Corp.,* 11 B.R. 310 (Bankr.N.D.Tex.1981); *In re Davis,* 11 B.R. 621, 623 n. 1 (Bankr.N.D.Tex.1981).

To the extent that a property tax claim exceeds the value of the estate's interest in the property subject to the tax, § 502(b)(3) mandates disallowance of the claim as either a § 507(a)(7) priority claim or as a general unsecured claim:

> It should be observed that the seemingly peremptory language of section 502(b)(3) precludes any suggestion that the disallowed tax claim would be entitled to general unsecured status upon being denied the priority status granted to tax claims. This section speaks to outright disallowance. It does not speak to denial of mere priority status. In consequence, it would appear that to the extent a claim is disallowed under section 502(b)(3), it is not allowed for any purpose whether it be priority or whether it be for distribution as a non-priority claim.

L. King, 3 *Collier on Bankruptcy,* ¶ 502.02[4], at 502–47 (15th ed. 1987). *See also Transco Corp.,* 11 B.R. at 312.

The court has found that the value of the debtors' estate's interest in the property subject to the tax claim was zero. PCA's subrogated claim for the prepetition taxes must therefore be disallowed as either a priority or an unsecured claim pursuant to § 502(b)(3).

---

**8.** In L. King, 3 *Collier on Bankruptcy,* ¶ 502.- 02[b][4], at 502–46 (15th ed. 1987), it is stated: The purpose behind section 502(b)(3) is ... to prevent depletion of the debtor's estate by the payment of overdue taxes on property which has come into the hands of the trustee despite the fact that such property had no value to the estate and was more frequently than not

PCA contends that § 502(b)(3) should not apply in this case in view of that section's purpose of preventing depletion of the estate to the prejudice of unsecured creditors.[8] PCA argues that there will be no prejudice to unsecured creditors by allowing its claim because the amount to be divided among unsecured creditors has already been fixed at $20,000 under the debtors' confirmed chapter 11 plan. The court rejects PCA's argument for two reasons. First, there is nothing in the language of § 502(b)(3) to support the distinction advanced by PCA. Second, there would be a detriment to unsecured creditors in this case if § 502(b)(3) is not applied because if PCA is allowed to receive a distribution on its tax claim from the funds designated in the debtors' plan for unsecured creditors, there will be that much less available from these funds for the other unsecured creditors. The debtors' objection to PCA's claim for prepetition taxes is allowed.

## 2. Postpetition Taxes

The court now turns to PCA's and Land Bank's claims for taxes they paid which had accrued on the debtors' property from the time the debtors filed their petition until the foreclosure sales were completed. PCA and the Land Bank contend that these claims are entitled to a first priority pursuant to 11 U.S.C. § 507(a)(1) and § 503(b)(1)(B)(i). 11 U.S.C. § 507(a)(1) states:

> (a) The following expenses and claims have priority in the following order:
>
> (1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

The pertinent portions of 11 U.S.C. § 503 read as follows:

abandoned to mortgagees, other lienors, or to taxing authorities. The injustice of such payments at the expense of the general unsecured creditors for the benefit of mortgagees or other lienors is clear since the payment of taxes from the estate of the debtor would clear away tax claims which might otherwise have remained charges on the property.

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1) . . . .

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title.

The debtors take the position that, because the value of the estate's interest in the property subject to the tax was zero, 11 U.S.C. § 502(b)(3) precludes the allowance of the § 503(b)(1)(B)(i) postpetition tax claims as well as the prepetition tax claims.

■ Apparently, there are no published decisions addressing the issue of whether § 502(b)(3) may be the basis for denying an administrative expense priority tax claim made pursuant to § 503(b)(1)(B)(i) and § 507(a)(1). Resolution of this issue requires an examination of the relationship between § 502, § 503, and § 507.

The essential difference between a seventh priority tax claim under § 507(a)(7) and a first priority tax claim under § 503(b)(1)(B) and § 507(a)(1) is that the former is for taxes incurred prior to the commencement of the bankruptcy case and the latter is for taxes incurred in the operation of the debtor's business after the filing

of the petition. *See United States v. Friendship College, Inc.*, 737 F.2d 430 (4th Cir.1984); *In re Kamstra*, 51 B.R. 826, 833–834 (Bankr.W.D.Mich.1985); *In re Carlisle Court, Inc.*, 36 B.R. 209, 216–218 (Bankr.D.C.1983). 11 U.S.C. § 502(i) [9] makes it clear that, even though a claim for a prepetition tax liability does not arise until after the commencement of the case, it is treated as if it arose prepetition and will be allowable only as a seventh priority.[10] Thus, § 507(a)(7) covers tax claims which arose prepetition (or which are treated as arising prepetition under § 502(i)) and § 503(b)(1)(B)(i) covers tax claims which arose postpetition (other than those within the scope of § 502(i)).

Keeping this distinction in mind, it is necessary to reexamine the language of § 502(a) and (b). Section 502(a) states that a claim, *proof of which is filed under 11 U.S.C. § 501*, is deemed allowed unless an objection is filed; section 502(b)(3) states that, if *such an objection* is made, then the court is to allow *such a claim* except to the extent that the claim is for a property tax which exceeds the value of the interest of the estate in the property subject to the tax. The court reads this language as limiting the application of § 502(b)(3) to those situations in which an objection is made to a claim *which was filed under 11 U.S.C. § 501.*

It is also stated in L. King, 3 *Collier on Bankruptcy*, ¶ 503.04[b], at 503–35 (15th ed. 1987):

[T]he interaction between section 507(a)(7), section 502(i), and section 503(b)(1)(B), which specifically excludes from its application taxes entitled to priority under section 507(a)(7), is confusing. To determine whether taxes are entitled to administrative expense status requires not only a finding that the taxes were incurred by the estate postpetition, but also a finding that the taxes do not fit within any of the categories specified in section 507(a)(7). Thus, the reference in section 503(a)(1)(B)(i) [this should read 503(b)(1)(B)(i) ] to section 507(a)(7) means that to the extent a debtor's prepetition liability becomes a tax claim after the petition, it is not for that reason alone to be given administrative expense status. Congress did not mean, however, to deny administrative expense status to a tax claim incurred by the trustee as the result of his operation of the business.

**9.** 11 U.S.C. § 502(i) states:

A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(7) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

**10.** All section 502(i) really does is make plain that a tax claim entitled to priority under section 507(a)(7), even though it arises after the commencement of the case and, therefore, might logically be entitled to administrative status under section 503(b) and, therefore, a first priority under section 507(a)(1), is allowed, to the extent allowable "as if such claim had arisen before the date of the filing of the petition." The allocation of such status as a pre-petition claim denies administrative status.

*In re Kamstra*, 51 B.R. at 834 (quoting 3 *Collier on Bankruptcy*, ¶ 502.09, at 502–102 n.1 (15th ed. 1985).

Section 501 refers to proofs of claim filed by a creditor or an indenture trustee.[11] PCA and the Land Bank are not indenture trustees and are not "creditors" with respect to their administrative expense priority postpetition tax claims. A creditor is defined in 11 U.S.C. § 101(9) as an entity that has a claim against the debtor *which arose at or prior to the time of filing of the debtor's voluntary bankruptcy petition* or a claim of a kind specified in 11 U.S.C. § 502(i) and other sections not relevant here. A claim [12] for a tax which arose postpetition (other than one within the scope of § 502(i)) is not made through a proof of claim filed pursuant to 11 U.S.C. § 501, but is instead made as "a request for payment of an administrative expense" within the meaning of 11 U.S.C. § 503(a).[13] Administrative expenses under § 503 are the one exception to the rule that claims asserted against the debtor's estate are deemed to be claims existing at the time of the filing of the petition. *Carlisle Court,* 36 B.R. at 215; *Collier on Bankruptcy,* ¶ 502.09, at 502–102 (15th ed. 1987). Because administrative expense priority tax claims are made pursuant to 11 U.S.C. § 503(b)(1)(B)(i) and § 507(a)(1), rather than through 11 U.S.C. § 501, section 502(b)(3) is not applicable to such claims.

The accrual of postpetition property taxes for property which has no value to the estate is, of course, usually detrimental to the interests of holders of unsecured claims, and is just one more reason why unsecured claimants must be vigilant and take an active role in chapter 11 cases.[14] The allowance of the claim for postpetition taxes in this case, however, will not affect the holders of unsecured claims as their distribution has been fixed by the chapter 11 plan.

In some circumstances, it might be appropriate to assess the postpetition taxes to the holder of the secured claim pursuant to 11 U.S.C. § 506(c), but this is not such a case. The debtors in possession have not asked for such an assessment and it is not clear that the delay in divesting the estate of its interest in the property benefited PCA or the Land Bank, as would be required by 11 U.S.C. § 506(c).[15] As between the debtors and PCA and the Land Bank, the debtors should be responsible for the postpetition taxes. The debtors resisted the motions to lift the stay and were given the opportunity to sell their property at private sale. PCA and the Land Bank contended that the private sale strategy would not work, and it turned out they were right. PCA and the Land Bank should not

**11.** 11 U.S.C. § 501 reads as follows:
(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.
(b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.
(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.
(d) A claim of a kind specified in section 502(e)(2), 502(f), 502(g), 502(h) or 502(i) of this title may be filed under subsection (a), (b), or (c) of this section the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition.

**12.** There is little doubt that a right to payment of an administrative expense postpetition tax pursuant to § 503(b)(1)(B)(i) and § 507(a)(1) does constitute a "claim" within the broad definition of 11 U.S.C. § 101(4).

**13.** 11 U.S.C. § 503(a) states:

An entity may file a request for payment of an administrative expense.

**14.** As this court has previously noted, most creditors' committees in this district are totally inactive and ineffective. *In re B & W Tractor Co., Inc.,* 38 B.R. 613, 615 (Bankr.E.D.N.C.1984). Procrastination in chapter 11 cases is a poor creditor strategy.

**15.** Bankruptcy Rule 4001(d), effective August 1, 1987, requires that notice of any agreement concerning a lifting of the stay be given to the creditors' committee or, if there is no creditors' committee, to the creditors listed pursuant to Bankruptcy Rule 1007(d). Holders of unsecured claims could conceivably object to an agreement which has the effect of requiring them to pay postpetition taxes on property from which they do not benefit. Notice of the consent order was not given to the creditors' committee in this case, but because the distribution for unsecured claims is fixed, the holders of unsecured claims are not prejudiced by the lack of notice.

suffer a loss for unpaid taxes which accrued while the debtors pursued their unsuccessful sales program.

PCA and the Land Bank are entitled to have their claims allowed as an administrative expense priority for the postpetition taxes they paid that are covered by 11 U.S.C. § 503(b)(1)(B)(i).[16] The claims for taxes which do not qualify for treatment under § 503(b)(1)(B)(i) are not allowable in any manner. According to the "Request for Payment of Chapter 11 Administrative Expenses" filed by the Land Bank, all of the $1,001.35 it paid to the Franklin County Tax Collector is entitled to administrative expense treatment pursuant to § 503(b)(1)(B)(i). PCA claims that $2,215.51 of the $6,657.02 that it paid to the Franklin County Tax Collector qualifies for priority treatment under § 503(b)(1)(B)(i), but the court will disallow $73.99 of that amount which appears to have been assessed prior to bankruptcy. Accordingly,

IT IS HEREBY ORDERED that the request for payment of chapter 11 administrative expenses filed by the Federal Land Bank of Columbia IS ALLOWED in the amount of $1,001.35; and

IT IS FURTHER ORDERED that the request for payment of chapter 11 administrative expenses filed by South Atlantic Production Credit Association IS ALLOWED in the amount of $2,141.52 and the remainder of the claim of South Atlantic Production Credit Association IS DENIED.[17]

---

**16.** It should be noted that 11 U.S.C. § 507(d) which, as discussed previously in this opinion, prohibits a subrogee from being subrogated to a taxing authority's priority rights under § 507(a)(7), is not applicable when the subrogation claim is for priority rights under § 507(a)(1).

**17.** If the debtors do not agree with the *amounts* submitted by PCA and the Land Bank after the hearing, the debtors may move for reconsideration of the amounts pursuant to 11 U.S.C. § 502(j) and Bankruptcy Rule 3008.