In re PIONEER TITLE
BUILDING, LTD.

Bankruptcy No. 90–10191–FM.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Sept. 26, 1991.

Harvey Caughey, Austin, Tex., Chapter 7 trustee.

Marilyn G. Miller, Pope, Roberts & Warren, P.C., Austin, Tex., for Franklin Federal.

Cora Doehring, Asst. County Atty., Travis County Attorney's Office, Austin, Tex., for Travis County.

Timothy T. Read, Levene & Eisenberg, Los Angeles, Cal. and Richel Rivers, Hilgers & Watkins, P.C., Austin, Tex., for debtor.

MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The Court held a hearing on August 27, 1991 and September 5, 1991 upon the Joint Motion for Payment of Chapter 11 Administrative Expenses filed by Franklin Federal BanCorp and Travis County, Texas, which seeks payment of ad valorem taxes assessed after the filing of the Chapter 11 proceeding upon property ultimately foreclosed upon by Franklin and which is opposed by both the Debtor and the Trustee appointed after the subsequent conversion to a Chapter 7 proceeding.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 151,

28 U.S.C. § 157(a) and (b)(1), and the Standing Order of Reference in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052.

### Findings of Fact

1. The Debtor filed its Chapter 11 petition on March 28, 1988 in the Central District of California. The case was subsequently transferred to this District by Order dated November 14, 1989 and was assigned the above referenced case number.

2. On September 4, 1990, Franklin purchased at its foreclosure sale the three tracts of real property owned by the Debtor, located at 1300 Guadalupe, Austin, Texas 78701, and known as the Pioneer Title Building (the "Property") for a bid price of $1,244,000.00.

As part of the Substitute Stipulation of Facts on Joint Motion for Payment of Chapter 11 Administrative Expenses filed on September 13, 1991, all parties stipulated that the indebtedness owed to Franklin with respect to the Property at the time of Franklin's foreclosure was:

| | BASE | PENALTY | INTEREST | TOTAL |
|---|---|---|---|---|
| 1988 | 39,453.80 | 4,734.45 | 7,890.76 | $ 52,079.11 |
| 1989 | 44,985.46 | 5,398.26 | 3,598.83 | 53,982.55 |
| | | | | $106,061.56 |

| | | |
|---|---|---|
| A. | Loan principal balance | $679,896.73 |
| B. | Accrued unpaid interest through 3/9/90 | 263,775.26 |
| C. | Attorneys fees | 37,073.64 |
| | Total as of 3/9/90 | $980,745.63 |

Interest accrued thereafter at a per diem rate of $232.84 until the foreclosure date of 9/4/90, or $41,911.20, resulting in a total indebtedness owed Franklin as of the date of foreclosure of $1,022,656.80. The stipulation is silent regarding ad valorem taxes which the Debtor neglected to pay, as that is the question we must now attempt to answer in this contested matter. The ultimate issue between the Debtor and Franklin, although not to be determined as part of this contested matter, is whether Franklin's foreclosure bid exceeded its total debt with the result being that the excess should be paid to the Debtor. Fortunately, that is for another day.

3. During the pendency of the Chapter 11 proceeding, the Debtor-in-possession did not pay any ad valorem taxes on the Property to Travis County for the years 1988, 1989, or 1990.

4. The base amount of the tax assessed by Travis County against the Property which today remains unpaid and the penalty and interest thereon through September 4, 1990 for the years 1988 and 1989 are as follows:

5. Franklin paid the ad valorem taxes on the Property for the year 1990 in full on January 29, 1991 in the amount of $46,870.93. Pro-rated through the foreclosure date of September 4, 1991, the sum of $31,846.55 (248/365 × $46,870.93) of the total amount of the 1990 taxes accrued while the debtor-in-possession was operating the Property; the remaining $15,024.38 accrued after Franklin owned the Property.

6. Franklin neglected to timely file a § 546(b) notice perfecting its alleged security interest in rents accruing from the Property.

7. As a result, the Trustee holds in excess of $220,000.00 in cash in the estate; virtually all of this money represents income from the operation of the Property by the debtor-in-possession and accrued interest thereon.

8. In a prior order entered in this case pursuant to a Motion filed by Franklin to determine its interest in the cash held by the Trustee, the Court determined that the

overwhelming great majority of this money is free of Franklin's secured claim.

9. The parties have stipulated that the Debtor's obligation to Franklin is non-recourse. Accordingly, Franklin will not be entitled to share as an unsecured creditor in any distributions of the cash held by the Trustee. The excess, if any, over other creditor's claims will, therefore, be returned to the Debtor.

10. A. The note held by Franklin states:

"It is expressly and distinctly provided and understood that the maker hereof shall have no personal liability on this note under any circumstances, it being intended that the holder of this note in the event of default hereon shall have the right to foreclose any and all liens securing the same as his sole remedy, and in the event of such foreclosure the maker hereof shall have no liability for any deficiency."

B. The deed of trust securing the note says, however, in relevant part:

"That in the event grantors shall fail ... to pay promptly when due all taxes and assessments, as aforesaid, ..., then the beneficiary may, at his option, pay such taxes and assessments, ...: that any sums which may be so paid out by the beneficiary...., including the costs, expenses and attorney's fees paid in any suit affecting said property when necessary to protect the lien hereof shall bear interest ... *and shall be paid by the grantors to beneficiary upon demand ... and shall be deemed a part of the debt hereby secured and recoverable as such in all respects.*" (Emphasis added).

11. The bar date for filing claims in the Chapter 7 case has not yet expired; so the full amount of all claims to be allowed is not yet known.

12. This case was converted from a case under Chapter 11 to a case under Chapter 7 on July 24, 1991.

*Issues*

1. Does Travis County, Texas have a valid Chapter 11 administrative expense claim for unpaid ad valorem taxes on the Property for the years 1988 and 1989?

2. Does Franklin have a valid Chapter 11 administrative expense claim for the 1990 ad valorem taxes it paid, or any portion thereof, by reason of subrogation to the position of Travis County, Texas?

*Discussion and Conclusions of Law*

■ 1. *Travis County—Administrative Chapter 11 Claim.* There seems to be ample authority to conclude that because the unpaid ad valorem taxes assessed by Travis County, Texas for the years 1988 and 1989 were assessed post-petition while the debtor-in-possession owned and operated the Property, they are entitled to Chapter 11 administrative expense status under 11 U.S.C. § 503(b)(1)(B)(i) and § 507(a)(1), including penalties and interest thereon through the date of the conversion of this case to a case under Chapter 7. *Boteler v. Ingels,* 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78 (1939); *Nicholas, Trustee v. U.S.,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); *In re Carlisle Court, Inc.,* 36 B.R. 209 (Bankr.D.C.1983); *In re Friendship College, Inc.,* 737 F.2d 430 (4th Cir.1984); *In re Fairchild Aircraft Corp.,* 124 B.R. 488 (Bankr.W.D.Tex.1991).

■ The Debtor argues that § 502(b)(3), which mandates disallowance of an ad valorem tax on property of the estate for pre-petition tax claims to the extent the property tax claim exceeds the value of the estate's interest in the property subject to the tax, should also be applied to post-petition ad valorem taxes assessed on the Property. However, no cases applying § 502(b)(3) to post-petition taxes have been cited by Debtor in support of its proposition.

The application of § 502(b)(3) to post-petition tax claims has been considered by at least one bankruptcy court. See *In re Spruill,* 78 B.R. 766 (Bankr.E.D.N.C.1987). That court denied the same and held that § 502(b)(3) applies only to situations in which a claim has been made under §§ 501 and 502; that is, it only applies to a claim

which arose prior to the time of the filing of the case. This Court agrees with the *Spruill* court's analysis and likewise concludes that, in this case, § 502(b)(3) is not applicable to the post-petition administrative expense tax claim of Travis County.

Further, it should be remembered that the $200,000.00 plus held by the Trustee came from the debtor-in-possession's operation of the Property and that such money is largely free from any lien claim of Franklin. So, to the extent benefit is required from the Property being taxed, we indirectly have such benefit here from the net operating profit from the debtor-in-possession's operation of the Property; and such benefit is substantial.

Travis County is entitled to a Chapter 11 administrative expense claim for the ad valorem taxes assessed on the subject property for the years 1988 and 1989, plus penalties allowed under the laws of the State of Texas and interest up to the date of the conversion of this case to a Chapter 7 case.

2. *Subrogation—Franklin Federal.* The first inquiry is to determine the contractual rights of the parties, i.e., does the Debtor have recourse liability to Franklin for the ad valorem taxes Franklin paid on the Property after it foreclosed?

■ Here, the Debtor is neither the maker of the note held by Franklin nor the grantor under the deed of trust which secures the note. That party is CBL & Associates, Inc., a Tennessee corporation. There is nothing in the record that reflects who CBL & Associates, Inc. is, if it has any relationship to the Debtor, or how and from whom the Debtor obtained title to the real estate secured by the deed of trust. Therefore, the Court does not know if the Debtor obtained title by assuming CBL's obligations or by simply taking subject thereto. Even so, it is not crucial to the determination of the issue at hand. The substantive law of the State of Texas, by which this Court is bound in making this determination, compels a construction that the combined language of the note and deed of trust in this case does not create any personal obligation on the part of the maker of

the note and grantor of the deed of trust to Franklin for unpaid ad valorem taxes; and, therefore, neither the Debtor nor its estate has any personal liability to Franklin regardless of whether it obtained the property by assuming or taking subject to CBL's obligation.

Language similar to that contained in Franklin's deed of trust was analyzed by the Supreme Court of Texas in *Smart v. Tower Land and Inv. Co.,* 597 S.W.2d 333 (Tex.1980) and *Wood, et al v. Henry S. Miller Co.,* 597 S.W.2d 332 (Tex.1980). In the *Smart* case, just as in this case, the promissory note clearly provided that there would be no personal liability with regard to the indebtedness evidenced thereby. And, as in *Smart,* there was a default, the secured lender foreclosed, and, subsequent to foreclosure, the secured lender paid ad valorem taxes which the owner, although required to do so under the deed of trust, had failed to pay. Also, in the *Smart* case, as here, the lender sought to enforce personal liability against the owner for recovery of the taxes.

The relevant language in the deed of trust in the *Smart* case provided that if Smart failed to pay the taxes when due, then the mortgagee had the right to pay them and

> "any and all expenses incurred and paid in doing so *shall be payable by [Smart] to [Tower]* with interest at the rate of ten per cent per annum from the date when the same was so incurred or paid, and *shall stand secured and payable by and under this deed in like manner with the other indebtedness herein mentioned.....*"

*Smart,* 597 S.W.2d at 336 (emphasis added). The language Franklin's deed of trust is very similar wherein it states that should Franklin pay the taxes, then such sums,

> "shall be paid by the grantors to beneficiary upon demand ... and shall be deemed a part of the debt hereby secured and recoverable as such in all respects."

The Supreme Court of Texas found the language in the *Smart* deed of trust did not "give rise to an additional remedy for

tax reimbursement, enforceable apart from foreclosure." *Id.* at 337. Further, in dicta, the Supreme Court noted that it would not have made any difference whether the mortgagee had paid the taxes before or after foreclosure because, under the language of the deed of trust and note, the mortgagee would not have acquired a right to a personal judgment against Smart. In making its interpretation of this language, the Court said:

"Although the words 'shall be payable' standing alone may lend some support to the interpretation urged by Tower, we adhere to the rule that '[i]t is the duty of the Court to construe the contract as an entire instrument, and to consider each part with every other part so that the effect and meaning of one part on any other part may be determined.' "

*Id.* at 337 (citing *Steeger v. Beard Drilling, Inc.,* 371 S.W.2d 684, 688 (Tex.1963)).

Here, examination of the contract as a whole (the note and deed of trust together), with the stipulation of the parties that the underlying debt was non-recourse, leads the Court to conclude that the construction applied in the *Smart* case is applicable here as well. As such, Franklin could not have held the Debtor personally liable for reimbursement of the ad valorem taxes which it paid on January 29, 1991 for the year 1990, or any portion of them. Accordingly, Franklin cannot collect this tax from the Debtor's estate because its sole contractual remedy was to collect them through the foreclosure process provided in the deed of trust.

■ Franklin also asserts that it should nevertheless be subrogated to Travis County's 1990 ad valorem tax claim against the estate since it paid the tax; and if it had not paid the tax, Travis County would have had an administrative claim for the taxes which accrued prior to foreclosure. Franklin, however, cites no authority for this proposition. The Court feels that the *Smart* and *Wood* cases are also dispositive of this issue. The Supreme Court's analysis in the *Smart* case succinctly analyzed the State's substantive equitable subordination common law (an analysis that need not

be repeated here) and, based thereon, concluded that:

"The mortgagee who purchases the property with delinquent taxes owed by the mortgagor, may account for the delinquent taxes in determining his bid. The purchasing mortgagee who fails to pursue this course of action and purchases the property with taxes remaining unpaid will be considered to have purchased with reference to the tax liability. Assuming that the taxing authority would have been entitled to a personal judgment against Smart for taxes assessed during the mortgage, we do not believe that the equities of this suit entitle Tower to be subrogated to that right."

*Smart,* 597 S.W.2d at 339.

Likewise, the record in this case does nothing to establish any "equities" which entitle Franklin to be subrogated to the right of Travis County. Indeed, in the Motion of Franklin Federal Bancorp, a Federal Savings Bank, for Order on Cash Collateral, filed with this Court in January 1991, after it had foreclosed, Franklin asserted that it had included $8/12$'s of the 1990 ad valorem taxes (calculated therein to be the amount of $31,247.29) in determining its total indebtedness against which to credit its foreclosure bid price. Franklin has presented no evidence or equitable reason why the Court should now reverse that transaction and allow Franklin an administrative claim for ad valorem taxes it paid after foreclosure, i.e. after the Property ceased to be property of the Debtor's estate.

### Conclusion

Travis County is entitled to an administrative expense claim for ad valorem taxes on the Property, penalties and interest to the date of conversion of this case to Chapter 7 for the years 1988 and 1989. Franklin is not entitled to an administrative claim for the ad valorem taxes for the year 1990 which it paid after it foreclosed upon the Property. The Trustee should not be required to pay the allowed claim of Travis County until after the bar date when all timely claims will have been filed.

Counsel for Travis County is directed to prepare the appropriate Order and to include in such proposed Order a recomputation of the interest on the 1988 and 1989 taxes so that such interest is computed and allowed only to the date of conversion, July 24, 1991. Should there be a dispute between the parties as to the calculation of such interest, counsel for Travis County is directed to file a Motion for Entry of Order in accordance with its calculations.