**In re James M. FISCHER, Jr., Debtor.**

**Bankruptcy No. 92–06305–GP3–11.**

United States Bankruptcy Court,
M.D. Tennessee.

July 21, 1995.

Paul E. Jennings, Jennings Lane & Ramer, Nashville, TN, for debtor-in-possession.

Edward T. Brading, Gullett Sandford Robinson & Martin, Nashville, TN, for Business Mens Assur. Co. of America.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION

The Court held a hearing on May 16, 1995 upon the request of Business Mens Assurance Company of America ("BMA") for payment, as an administrative expense, for post-petition property taxes it paid that had been assessed against the debtor-in-possession for certain parcels of real property. James M. Fischer, the Debtor-in-Possession, ("Debtor") filed an objection to BMA's motion asserting that BMA's payment of the taxes should not be treated as an administrative expense. For the reasons hereinafter stated, the Court sustains the Debtor's objection, and denies BMA's request for payment of the taxes as an administrative expense.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 151, 28 U.S.C. § 157(a) and (b)(1), and the Standing Order of Reference in this District. This is a core proceeding under 28 U.S.C. 157(b)(2)(A) and (B). This Memorandum constitutes this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### II. FACTS

The parties stipulated to the facts as follows:

1. The Debtor filed his petition in this case on July 21, 1992.

2. At the commencement of and during this bankruptcy case, the estate has compromised, among other properties, certain condominium units generally identified as Units 102, 105, 106, 502, 707, and 710 of the Airport Office Condominiums in Nashville, Davidson County, Tennessee.

3. BMA is the holder of indebtedness secured by deeds of trust encumbering the condominium units. By order entered July 15, 1994, BMA was granted relief from the automatic stay. On August 25, 1994, BMA completed foreclosure sales of the condominium units under its deeds of trust. BMA was the successful bidder for each of the condominium units at the foreclosure sales.

4. No 1993 real property taxes were owed for Units 102, 105, 106, and 707. The Debtor failed to pay the 1993 real property taxes for Units 502 and 710 by February 28, 1994, which was the last day that 1993 taxes could be paid without penalties and interest.

5. On August 25, 1994, BMA paid in full the 1993 real property taxes owing for

Units 502 and 710. BMA's payment was in the total amount of $11,520.86. This payment consisted of (i) the base amounts of real property tax for Units 502 and 710, or $10,569.60, plus, (ii) statutory penalties on the base amounts at the rate of 0.5% per month, or $317.09, plus (iii) statutory interest on the base amount at the rate of 1.0% per month, or $634.17.

6. Real property taxes for 1994 were owed for all six condominium units. BMA has paid the base amount of real property taxes owing for 1994 in the following amounts:

| UNIT | AMOUNT |
|------|--------|
| 102 | $1,359.00 |
| 105 | $4,213.80 |
| 106 | $3,405.60 |
| 502 | $6,591.60 |
| 707 | $1,202.40 |
| 710 | $3,978.00 |
| **TOTAL** | **$20,750.40** |

The sole issue presented to the Court for decision on these stipulated facts is whether BMA is entitled to recoup the money it paid for the post-petition taxes of the debtor as an administrative expense under the United States Bankruptcy Code.

BMA argues that it is subrogated to the claim of the taxing authority and can assert an administrative expense claim for the post-petition real property taxes that it paid on behalf of the debtor-in-possession. However, BMA can only be subrogated by statute, contract, or equity. Since no contractual right of subrogation exists between these parties, the discussion is limited to subrogation by statute and/or equity.

## III. DISCUSSION

### A. Statutory Subrogation Under 11 U.S.C. § 509

 Section 509 of the United States Bankruptcy Code governs subrogation of a codebtor. That section provides in relevant part as follows:

§ 509. **Claims of codebtors.**

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. § 509(a) (Clark Boardman Callaghan 1994). Section 509 requires that an alleged subrogee not have acted as a volunteer in making the payment, and that the alleged subrogee not be primarily liable for the debt. *In re Richardson*, 178 B.R. 19 (Bankr.D.Dist.Col.1995); *In re Rose*, 139 B.R. 878, 882 (Bankr.W.D.Tenn.1992). The plain language of § 509 states that a party who pays a claim on which it is jointly liable with the debtor, is subrogated to the rights of the creditor for that claim. However, the party paying the claim must do so *because* it is liable with the debtor on that claim, *i.e.*, a surety, or a guarantor, not because the alleged subrogee wishes to protect its own security interest, *i.e.*, a mortgagee.

Section 509(a) does not govern this case. As mortgagee, BMA had the ability to pay the taxes if the debtor did not, but it was under no obligation, liability or other duty to do so. Obviously, a mortgagee would be inclined to pay delinquent property taxes to protect its own security interest, but without an obligation or liability on the debt with the debtor, the provisions of § 509(a) do not apply, and no right of subrogation arises in favor of BMA as a matter of statute.

### B. Equitable Subrogation

 Subrogation as a matter of equity is defined by state law and is not dependent upon privity of contract. Equitable subrogation is a doctrine designed to obtain substantial justice and to prevent wrongdoing, and arises when an entity, even if for its own benefit, pays a debt that another is primarily liable. *Wimberly v. American Cas. Co. of Reading Pa.*, 584 S.W.2d 200, 203 (Tenn. 1979); *Castleman Constr. Co. v. Pennington*, 222 Tenn. 82, 432 S.W.2d 669, 674 (1968). Subrogation is based upon the principle that when a benefit had been conferred on a party at the expense of another, the one conferring the benefit becomes entitled to attempt to recoup the loss. The purpose of the doctrine is to achieve an "equitable adjustment ... and perfect justice between the parties by

securing the ultimate discharge of a debt by the person, who in equity and good conscience ought to pay it, and preventing the sweeping away of the fund from which the creditor ought to be paid." *In re Glade Springs, Inc.*, 47 B.R. 780, 784 (Bankr. E.D.Tenn.1985) (*quoting* 73 Am.Jur.2d *Subrogation* § 3 (1974)).

BMA relies upon a decision by the Bankruptcy Court for the Eastern District of North Carolina, *In re Spruill*, 78 B.R. 766 (Bankr.E.D.N.C.1987). In that case, the Court held that two secured creditors who had paid post-petition property taxes following foreclosure of property of the debtor-in-possession were entitled to an administrative expense for the post-petition taxes they paid that were covered by § 503(b)(1)(B)(i).

In that case, the debtor-in-possession vigorously objected to the secured creditors' respective motions for relief from stay. The parties agreed that the debtor-in-possession could sell the subject property at a private sale, but if the property was not sold within a certain time then the secured creditors would be given relief from the stay to foreclose. The debtor-in-possession could not sell the property, and foreclosure did in fact occur. After foreclosure, the secured creditors each paid part of the outstanding post-petition tax obligations of the debtor-in-possession. The Court reasoned that the creditors should not be burdened with the taxes that accrued while the debtor-in-possession attempted unsuccessfully to sell the subject property. The Court stated

> [i]n some circumstances, it might be appropriate to asses the postpetition taxes to the holder of the secured claim pursuant to 11 U.S.C. § 506(c), but this is not such a case. The debtors-in-possession have not asked for such an assessment and it is not clear that the delay in divesting the estate of its interest in the property benefited the [secured creditors], as would be required by 11 U.S.C. § 506(c).

*Spruill*, 78 B.R. at 772.

The Court allowed the administrative expense claim of the secured creditors, without addressing how those creditors became subrogated to the rights of the taxing authority. It appears, however, that the Court simply balanced the equities of the situation and allowed the subrogation right to arise in favor of the secured creditors.

The debtor relies upon a decision by the Bankruptcy Court for the Western District of Texas, *In re Pioneer Title Building, Ltd.*, 133 B.R. 822 (W.D.Tex.1991). There, the Bankruptcy Court found that a secured creditor who had made a partial payment[1] towards satisfaction of the debtor-in-possession's post-petition taxes following foreclosure, was not entitled to be subrogated to the taxing authority's right to assert an administrative claim. *Pioneer*, 133 B.R. at 826. The *Pioneer Title* Court relied upon the two decisions of the Texas Supreme Court[2] that analyzed the law of equitable subrogation.

---

1. Subrogation under 11 U.S.C. § 509 requires payment of the debt in full. However, no such requirement exists for equitable subrogation.

2. *Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333 (Tex.1980); *Wood, et al. v. Henry S. Miller Co.*, 597 S.W.2d 332 (Tex.1980). In *Smart* the Texas Supreme Court discussed the doctrine of equitable subrogation on facts which are remarkably similar to the case now under consideration. The *Smart* Court reasoned as follows:

 [The Mortgagee] contends that notwithstanding the terms of the mortgage contract, under principles of equitable subrogation, it is entitled to a personal judgment against [the Mortgagor] for tax reimbursement. Equitable subrogation may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. A right to subrogation is often asserted by one who pays a debt owed by another. If entitled to full subrogation, the payor is allowed to enforce rights available to the creditors, such as rights against the debt's security. Subrogation to a creditor's rights is available, however, only when the debtor was enriched unjustly; thus the payor who confers the benefit as a "mere volunteer" is not entitled to this remedy....

 After foreclosure, the relationship between mortgagor and mortgagee in those capacities ends. If the mortgagee purchases the mortgaged property, as [the Mortgagee] did in this case, his interest in the property becomes an ownership interest. If taxes on the property owed by the mortgagor are delinquent, the purchaser, whether the mortgagee or a disinterested party, may desire to pay them to prevent foreclosure by the taxing authorities. Because of his interest in protecting his title, the purchaser is not a "mere volunteer," when he discharges an outstanding tax lien....

 The mortgagee who purchases the property with delinquent taxes owed by the mortgagor,

It concluded that the Texas Supreme Court's analysis was dispositive of the issue, and that no equitable grounds existed for extending a right of subrogation to the mortgagee. Specifically, the Court found that the mortgagee had every opportunity to consider the delinquent taxes in its foreclosure bid, and the failure of a mortgagee to do so meant that the mortgagee had simply missed its opportunity to recoup its losses and took subject to the delinquent taxes.

■ This Court finds that the reasoning of the *Pioneer Title* case is much more compelling, and is more consistent with the doctrine of equitable subrogation as defined by Tennessee law.[3] The doctrine of equitable subrogation serves many purposes, the most important of which is to prevent unjust enrichment. In this instance, it would be BMA who would be unjustly enriched were it allowed to be subrogated to the taxing authority's right to assert the administrative claim.

■ Tennessee law is clear that a purchaser at a foreclosure sale takes the property subject to the tax liens unless it is expressly and specifically stated otherwise. *United Am. Financial Corp. v. First Heritage Nat'l Bank,* 53 B.R. 43 (Bankr. E.D.Tenn.1985). BMA would indeed receive windfall if it reduced its bid after consideration of the delinquent taxes, and then were permitted to recover those taxes as an administrative expense. Although no proof was offered to the Court on whether BMA did in fact know of the delinquent taxes before arriving at its bid at foreclosure, the issue of BMA's knowledge is irrelevant. BMA took subject to the taxes unless specifically provided otherwise at the foreclosure sale. It was BMA's responsibility to inquire about the status of the taxes with respect to the properties on which it was a mortgagee. BMA's failure to adjust its bid accordingly was an error in judgment that it may not now seek to rectify through an administrative expense payment.[4]

## IV. CONCLUSIONS

For all of the above-stated reasons, the Court sustains the objection of the debtor, and denies BMA's request for payment, as an administrative claim, post-petition taxes which it paid on properties for which it was successful bidder at foreclosure.

It is, THEREFORE, so ordered.

---

may account for the delinquent taxes in determining his bid. The purchasing mortgagee who fails to pursue this course of action and purchases the property with taxes remaining unpaid will be considered to have purchased the property with reference to the tax liability. *Smart v. Tower Land and Inv. Co.,* 597 S.W.2d at 337–39. The Texas Supreme Court ultimately concluded, in this extremely factually similar case, that the mortgagee would not be subrogated to the rights of taxing authority to pursue an in personam action against the mortgagor for payment of the delinquent taxes. *Id.* at 339.

3. Research has not revealed any Tennessee decisions which discuss the consequences of a mortgagee's payment of a mortgagor's delinquent taxes in the context of equitable subrogation. However, the general doctrine of equitable subrogation suggests that the Tennessee Supreme Court would find that BMA would not be equitably subrogated to any right that Davidson County would have had to pursue collection of the ad valorem taxes.

Texas law is virtually identical to Tennessee law with respect to the equitable subrogation doctrine.

4. In the 1994 Amendments, the United States Congress amended § 362(b) to include a subsection (18) which allows for the creation or perfection of a statutory lien for ad valorem taxes which come due after the filing of a petition. *See* 11 U.S.C. § 362(b)(18) (1995). This amendment overruled the Second Circuit decision of *In re Parr Meadows,* 880 F.2d 1540, *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) and its progeny that created a windfall to secured creditors who would otherwise be subordinated to these priming liens. *See* H.R.Rep. 103–834, 103rd Cong., 2nd Sess. 45 (Oct. 4, 1994); 140 Cong.Rec. H610771 (Oct. 4, 1994).

Allowance of the perfection of the tax lien for post-petition ad valorem taxes is further evidence that Congress intended the law to allow that the creation or perfection of a taxing authority's lien was to continue as if no bankruptcy filing had ever occurred. Post-petition creation or perfection of a taxing authority's lien does not alter the fact that a mortgagee who bids at foreclosure must consider any delinquent taxes, and weigh that factor in determining its bid price at foreclosure. In fact, a bidder at a foreclosure sale during the pendency of a bankruptcy proceeding, or at any time, proceeds at their peril, if they do not consider the now-primed liens of a taxing authority in calculating a foreclosure bid.