IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 14, 2010

**JON HIGDON v. REGIONS BANK**

**Appeal from the Chancery Court for Morgan County**
**No. 08-101       Frank V. Williams, III, Chancellor**

_____

**No. E2009-01298-COA-R3-CV - FILED MAY 13, 2010**

_____

This appeal concerns a primary lien holder's security interest in certain real property following a foreclosure sale and the obligation of a third-party purchaser of the foreclosed property to remit to the lien holder rents collected after notice of mortgage acceleration. The plaintiff contended that the defendant bank was not entitled to claim priority for any additional indebtedness above the original principal amount stipulated in the Deed of Trust, plus interest and attorney's fees. The plaintiff further alleged that the bank's payment in full of the first mortgage holder's loan constituted a release of this loan and not an assignment. The defendant bank claimed that the plaintiff was liable to it for rent collected by the plaintiff on the property after notice of the mortgage acceleration. The trial court ordered that the defendant bank was not required to release its lien on the property until all of the funds due were paid and that the plaintiff must pay the defendant bank $6,300 in rent payments. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

Michael L. Powell, Knoxville, Tennessee, for the appellant, Jon Higdon.

Ben H. Thomas, Nashville, Tennessee, for the appellee, Regions Bank.

**OPINION**

**I. BACKGROUND**

The property at issue in this litigation is located at 178 Forrest Hills Drive in Harriman, Morgan County, Tennessee ("the Property"). At trial, the parties stipulated to the following chronology of the Property's relevant mortgage history.

In March 1995, David W. Stinnett and his wife Tonya Edna Stinnett ("the Stinnetts") purchased the Property by a Warranty Deed.[1] The Stinnetts financed their purchase of the Property through a loan from Third National Bank of East Tennessee (predecessor to SunTrust Bank) for the principal indebtedness amount of $48,858.00,[2] which was secured by the Property.[3]

On April 24, 1998, the Stinnetts refinanced the Property with a loan obtained from ORNL Federal Credit Union ("ORNL") in the amount of $58,500.[4] On June 25, 1998, SunTrust Bank (successor to Third National Bank of East Tennessee) declared a full release of its Deed of Trust, making ORNL the first and only lien holder on the Property at that time.[5]

On September 9, 1999, the Stinnetts obtained a further mortgage loan from Weather Tamer for the original principal amount of $17,537.94.[6] Weather Tamer assigned this mortgage to Key Bank USA, NA, on September 9, 1999.[7]

On September 20, 1999, the Stinnetts obtained still another mortgage loan, this one from ENM, Inc., for the original principal amount of $23, 444.20.[8] ENM's interest in the Property was transferred to AmSouth Bank (predecessor to Regions Bank, the

---

[1]Warranty Book Volume P (Series 6, page 81) in the Register's Office for Morgan County.

[2]This debt amount is recorded in the paperwork for the mortgage loan but differs from the amount ($48, 585.00) stipulated in the factual record.

[3]Trust Book Volume X (Series 5, page 909).

[4]Trust Book Volume O (Series 6, page 635).

[5]Release recorded in Miscellaneous Book 61, page 271.

[6]Trust Book Volume Y (Series 6, page 422).

[7]Assignment recorded in Miscellaneous Book 64, Page 690.

[8]Trust Book Volume X (Series 6, page 761).

defendant/appellee in this case) by assignment.[9]  Although the origination of Key Bank's mortgage predated Regions Bank's mortgage, Regions Bank recorded its Deed of Trust prior to Key Bank recording its interest in the Property.

Accordingly, as of October 1999, the priority of lien holders were in this order (from highest to lowest): ORNL, Regions Bank, and Key Bank.  In August 2001, Regions Bank paid the amount of $54, 324.14 to the first mortgage holder, ORNL, to stop a foreclosure sale of the Property that was scheduled for September 14, 2001.  As a result, ORNL acknowledged that payment in full was made on the first Deed of Trust (dated April 24, 1998) and executed a Release of Deed of Trust on June 6, 2001.[10]  Consequently, Regions Bank became the first priority lien holder, with Key Bank as the second lien holder.

On August 2, 2001, the Stinnetts filed for bankruptcy under Chapter 13, Title 11 of the U.S. Bankruptcy Code.  In their petition for bankruptcy, the Stinnetts designated the "First Lien on Residence" with AmSouth Bank (predecessor to Regions Bank) in the amount of $77,500.  The mortgage with ORNL was not disclosed in the Stinnetts' bankruptcy petition.  On September 22, 2001, AmSouth Bank filed a proof of claim in the Stinnetts' Chapter 13 proceeding, listing the total debt owed as $78, 716.24.

On November 8, 2007, the plaintiff/appellant, Jon[11] Higdon, purchased the Property at a foreclosure auction conducted on behalf of the junior lien holder, Key Bank, pursuant to the power of sale provision stipulated in Key Bank's Deed of Trust.  Conveyance of the foreclosed Property to Mr. Higdon was recorded in a trustee's deed.[12]  Mr. Higdon testified that prior to purchasing the Property, he did not contact the Stinnetts or Regions Bank (formerly AmSouth Bank) to ascertain the payoff amount on the Property.

Regions Bank's Deed of Trust included a mortgage acceleration clause that could be executed upon the borrower's breach of the terms and conditions of the loan agreement. Paragraph 19 of Regions Bank's Deed of Trust provided for an assignment of rents stating, in pertinent part:  "As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they

---

[9]Miscellaneous Book 64, page 465.

[10]Miscellaneous Book 68, page 787.

[11]Mr. Higdon's first name was spelled variously as "John" or "Jon" throughout the record.  We use "Jon" here because the cover sheet on the Technical Record from the trial court bears this spelling.

[12]Warranty Book 83, page 537.

become due and payable." Regions Bank provided proper notice to Mr. Higdon via his attorney that failure to resolve the default would result in the acceleration of the mortgage debt. The mortgage was accelerated on April 6, 2008, pursuant to Regions Bank's Deed of Trust, paragraph 17.

On July 10, 2008, Mr. Higdon filed a complaint in the trial court, requesting the court to enjoin Regions Bank from pursuing foreclosure proceedings until a judicial determination as to the actual amount secured by the Deed of Trust could be made and to declare the rights of the parties with respect to the Deed of Trust. The court issued a temporary restraining order, prohibiting Regions Bank from foreclosing on the Property. Regions Bank filed its answer and counterclaim, asserting a security interest in the rents generated by the Property at issue and collected by Mr. Higdon. Pursuant to the acceleration clause in its Deed of Trust, Regions Bank requested Mr. Higdon to remit rents he had collected prior to this cause of action. Regions Bank also filed a Motion for Preliminary Mandatory Injunction, which was granted by the court. Pursuant to the trial court's order, Mr. Higdon was to remit 80 percent of rents collected from the rental of the Property to his attorney for deposit in an escrow account until the resolution of this action.

At the trial held on May 12, 2009, Mr. Higdon testified that he had no knowledge of the claim by Regions Bank that it was owed in excess of $120,000 on its Deed of Trust (original principal amount of $123,444.20 plus payoff of the first mortgage advanced to ORNL). He acknowledged that he was aware that Regions Bank might claim to be owed more than the amount set forth in the Deed of Trust.

Following the trial, the court ordered that Regions Bank was not required to release its lien on the Property until it received all the funds to which it was due. The court found that the payoff amount of $139,665.12 stipulated at trial included the amount advanced to ORNL. In addition, the court awarded $6,300 to Regions Bank for the rents collected by Mr. Higdon during his ownership of the Property. Mr. Higdon timely appealed.

## II. ISSUES

Mr. Higdon presents the following issues for review, which we restate here:

A.      Whether the trial court erred in holding that Regions Bank was secured for the amount of its original debt plus the amount of indebtedness paid by Regions Bank to release a prior deed of trust.

B.      Whether the trial court erred in holding that Mr. Higdon was liable to

-4-

Regions Bank for the payment of rent pursuant to a deed of trust to which Mr. Higdon was not a party.

In response, Regions Bank raises an additional issue:

C.      Has this declaratory action been rendered moot by the subsequent foreclosure and sale of the realty in question?

Regions Bank argues that this appeal is moot because it has already foreclosed on the Deed of Trust and sold the Property at a foreclosure auction held on July 7, 2009. The factual basis of this argument is presented through exhibits and affidavits in the briefs of the parties. These documents were neither offered nor admitted into the record by the trial court. "Attachments to briefs are not evidence and will not be considered by the appellate courts." *Forrest v. Rees,* No. 01C01-9411-CC-00387, 1996 WL 571765, *3 (Tenn. Crim. App. Oct.8,1996). We therefore find Regions Bank's argument that the appeal has been rendered moot to be without merit.

### III.  STANDARD OF REVIEW

This case was tried by the court without a jury. Our review, therefore, is de novo upon the record of the proceedings below with a presumption of correctness as to the findings of fact of the trial court. *See* Tenn. R. App. P. 13(d); *Boarman v. Jaynes*, 109 S.W.3d 286, 289-90 (Tenn. 2003). This court imputes no presumption of correctness on the trial court's conclusions of law. *Rutherford County v. Wilson*, 121 S.W.3d 591, 595 (Tenn. 2003); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). In the case at bar, the parties stipulated to the material facts, and thus, the trial court's judgment on the two issues on appeal are questions of law.

### IV.  ANALYSIS

A.

It is Mr. Higdon's position that the trial court erred in finding that Regions Bank's lien on the Property was secured to a total amount that included the original principal debt and the amount advanced to ORNL, a superior lien holder. He contends that Regions Bank's priority claim is limited to the indebtedness amount on which it paid recordation tax. Mr.

Higdon's assertion relies heavily on 1980s Tennessee case law that interprets the mortgage tax statutes and the effect of recordation on the priority status of liens.

Indebtedness tax for mortgages, deeds of trust, and other security instruments is governed under Tenn. Code Ann. § 67-4-409(b), which provides the following:

> Prior to the public recordation of any instrument evidencing an indebtedness, including, but not limited to, mortgages, deeds of trust, conditional sales contracts, financing statements contemplated by the Uniform Commercial Code, compiled in title 47, and liens on personalty, other than on motor vehicles, there shall be paid a tax, for state purposes only, of eleven and one half cents (11.5¢) on each one hundred dollars ($100) or major fraction thereof of the indebtedness so evidenced.

In addressing a dispute over claims to collateral between a junior and senior creditor in 1981, this court held in *American City Bank of Tullahoma v. Western Auto Supply Co.*, 631 S.W.2d 410 (Tenn. Ct. App. 1981), that a creditor's filed security interest is limited to only the amount on which state privilege tax for recording the instrument is paid. *Id.* at 422-23 ("The payment of the privilege tax on filing financing statement is a *condition precedent* to filing.") (emphasis added). Noting public policy concerns of fairness for creditors in competition, this court concluded that any indebtedness beyond the amount for which mortgage recording tax was paid constituted a nullity. *Id.* at 423. ("Fairness requires that we deny rewards to those who ignore the requirements of obtaining the privilege of filing."). *Id.* at 425.

In *Nashville City Bank & Trust Co. v. White*, 1990 WL 31745 (Tenn. Ct. App. M.S., Mar. 23, 1990), this court, invoking the per se rule set forth in *American City Bank*, resolved a priority claim dispute between two banks over proceeds acquired from a foreclosure sale. The issue centered on whether Third National Bank, a holder of a superior security instrument, could retain its priority status on an advance made after a subsequent bona fide creditor, Nashville City Bank, perfected a security interest in the same property. *Id.* at *1. Basing its decision on the rationale applied in *American City Bank*, this court in the *Nashville City Bank* case held that the amount of Third National's lien at the time Nashville City filed its second-priority deed of trust was limited to only the original amount of principal indebtedness recorded in Third National's first-priority loan. *Id.* at *3. Third National's advance to pay a mortgagor's overdraft of $226,000 did not "relate back to the time of the original loan as to give it priority over Nashville City Bank's lien." *Id.* at *4.

The factual circumstances of *American City Bank* and *Nashville City Bank* predated the Tennessee legislature's 1987 amendment to Tenn. Code Ann. § 67-4-409(b). The

amended statutory provision, subsection (b)(10)(A), provides the following:

> Nonpayment or underpayment of tax on an indebtedness, or failure timely to pay tax on an increase in indebtedness, shall not affect or impair the effectiveness, validity, priority, or enforceability of the security interest or lien created or evidenced by the instrument, it being declared the legislative intent that the effectiveness, validity, priority, and enforceability of security interests and liens are governed solely by law applicable to security interests and liens, and not by this title.

Tenn. Code Ann. § 67-4-409(b)(10)(A) (Supp. 2009).

The validity of Mr. Higdon's argument relies exclusively on precedent established in the 1981 *American City Bank* case without regard to subsequent legislative revisions of the relevant statutes. This case is unavailing because of the statutory amendment enacted in 1987. The *Nashville City Bank* court even acknowledged that the amended statute makes its application of the ruling reached in *American City Bank* "extremely limited." *Nashville City Bank*, 1990 WL 31745, at *3. The Tennessee Supreme Court ultimately reversed the judgment in *Nashville City Bank*, stating that its holding "is consistent with the [amendment] enacted by the General Assembly and recognizes that the primary purpose of recording statutes is to establish priority of liens, not the collection of taxes." *Nashville City Bank & Trust Co. v. White*, No. 01501-9007CH00063, 1991 WL 137595, at *2 (Tenn. July 29, 1991). In the case at bar, Regions Bank argues that given the aforementioned Tennessee statutory law on the secured status and validity of advances made by mortgagees, Mr. Higdon cannot prevail on the first issue under appeal. We agree. Mr. Higdon's contention is foreclosed by Tenn. Code Ann. § 67-4-409(b)(10)(A).

The position of Regions Bank is further strengthened by the inclusion of a future advances clause in its original deed of trust. Such clauses are sometimes referred to as "dragnet" clauses in financial circles. A dragnet clause is defined as "one which, on its face, purports to include within the coverage of the deed of trust all present and future indebtedness owed by the borrower to the lender in addition to the specific debt being secured by the deed of trust." *In re Lemka*, 201 B.R. 765, 767 n. 2 (Bankr. E.D. Tenn. 1996). In Tennessee, future advance clauses in security instruments are recognized as valid and are enforceable according to their terms if the relevant language is plain and unambiguous. *Home Fed. Bank, FSB v. First Nat'l Bank*, 110 S.W.3d 433, 436-37 (Tenn. Ct. App. 2002); *In re Willie*, 157 B.R. 623, 625-26 (Bankr. M.D. Tenn. 1993); *Johnson v. Midland Bank & Trust Co.*, 715 S.W.2d 607, 611 (Tenn. Ct. App. 1986). The Tennessee legislature codified the enforceability of such clauses by enacting the following statutory provision:

(b) Any contract, security agreement, note, deed of trust, or other security instrument, in writing and signed or endorsed by the party to be bound, that provides that the security interest granted therein also secures other provisions or future indebtedness, regardless of the class of other indebtedness, be it unsecured, commercial, credit card, or consumer indebtedness, shall be deemed to evidence the true intentions of the parties, and shall be enforced as written . . . .

Tenn. Code Ann. § 47-50-112(b) (Supp. 2009).

Tennessee statutory law defines "mortgage" as including "a mortgage, deed of trust, or other conveyance of real property securing obligations." Tenn. Code Ann. § 47-28-101(a)(4). Tenn. Code Ann. § 47-28-102 provides that a mortgage may stipulate

that it secures not only existing indebtednesses or advances made contemporaneously with the execution thereof, *but also future advances, whether obligatory, or optional, or both*, and whether made under open-end credit agreements or otherwise, to the same extent as if such future advances were made contemporaneously with the execution of the mortgage, even though no advance is made at the time of the execution of the mortgage and even though no indebtedness is outstanding at the time any advance is made.

Tenn. Code Ann. § 47-28-102 (Supp. 2009) (emphasis added).

In the instant case, Regions Bank's Deed of Trust (dated September 20, 1999) contained a standard future advances clause as evidenced by the printed language of the deed, authorizing that the Property would also secure "the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust." Mr. Higdon does not contest the validity of the future advances clause in Regions Bank's Deed of Trust or that the pertinent language is clear and unambiguous.

Future advances may "relate back to the time of the recording of the mortgage, and are prior and superior to subsequent encumbrances and conveyances" in accordance with Tenn. Code Ann. § 47-28-103(a). This statute covers optional advances made under a non-open-ended mortgage, which is applicable in the instant case: "Optional advances made under any mortgage securing future advances, other than an open-end mortgage, are superior in priority to any intervening conveyance or encumbrance unless the mortgagee has actual notice of the intervening conveyance or encumbrance prior to exercising the mortgagee's option to make the advance." Tenn. Code Ann. § 47-28-103(c) (Supp. 2009). Tennessee statutory law further authorizes that disbursements made by a creditor to a third party in order

-8-

"to protect the efficacy of the creditor's security" are secured by the mortgage. Tenn. Code Ann. § 47-28-109(2) (Supp. 2009). The interest on such advances or disbursements of funds "shall be secured by the mortgage, even though the mortgage does not specifically provide for future advances, or the advances or disbursements cause the amount of the total indebtedness to exceed the principal amounts stated in the mortgage." Tenn. Code Ann. § 47-28-109(4) (Supp. 2009).

Because recordation tax was paid on the original debt amount of $23,444.20, Regions Bank's payment of the ORNL mortgage loan to prevent a foreclosure sale of the Property was secured by the future advances clause in Regions Bank's original Deed of Trust; therefore, Regions Bank justifiably relied on the future advances clause contained in its original security instrument dated September 20, 1999. The trial court did not err in holding that Regions Bank was secured for the amount of its original debt in addition to the amount of indebtedness paid by Regions Bank to release a prior deed of trust.

## B.

The second issue presented by this appeal is whether Mr. Higdon is liable to Regions Bank for rent payments pursuant to the mortgage acceleration clause in Regions Bank's Deed of Trust on the Property. Mr. Higdon avers that he should not be required to pay Regions Bank rents collected from the Property because of the absence of contractual privity between Mr. Higdon and Regions Bank.

Under Tennessee law, "a purchaser at a foreclosure sale takes the property subject to the tax liens unless it is expressly and specifically stated otherwise." *In re Fischer*, 184 B.R. 41, 45 (Bankr. M.D. Tenn. 1995); *see also United Am. Fin. Corp. v. First Heritage Nat'l Bank*, 53 B.R. 43, 45 (Bankr. E.D. Tenn. 1985). It was Mr. Higdon's responsibility to inquire about the status of any mortgage liens or encumbrances with respect to the Property prior to purchasing it at a foreclosure auction. Mr. Higdon stipulated that he did not contact Regions Bank or AmSouth Bank to ascertain the payoff on the realty, nor did he contact the Stinnetts, the original mortgagors.

In general, acceleration clauses in deeds of trust are regarded as valid and enforceable according to their terms under Tennessee law. *Lively v. Drake*, 629 S.W.2d 900, 902 (Tenn. 1982). Tenn. Code Ann. § 47-1-309 (Supp. 2009) permits a party or that party's successor in interest to "accelerate payment or performance . . . 'at will' or when the party 'deems itself insecure'. . . if that party in good faith believes that the prospect of payment or performance is impaired." Paragraph 17 of Regions Bank's Deed of Trust contains an acceleration clause. As additional security, Regions Bank's Deed of Trust provides that upon acceleration of the

mortgage loan, Regions Bank is entitled to collect the rents and apply a portion of the rent assignment to the outstanding debt: "As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable." Regions Bank provided proper notice to the Stinnetts and to Mr. Higdon via his attorney that failure to cure the default within thirty days of the date of the notification would result in the acceleration of the mortgage debt. Subsequently, the mortgage was accelerated one month later on April 6, 2008, pursuant to the acceleration provision provided in Regions Bank's Deed of Trust.

Mr. Higdon argues that the absence of contractual privity with Regions Bank renders the express assignment of rents in Regions Bank's Deed of Trust unenforceable, and as such, he is not obligated to relinquish his rental income to Regions Bank in partial payment of the mortgage loan. In cases where an express assignment of rents is absent in a deed of trust, "a mortgagee has no lien on, or security interest in rents." *In Re Crabtree*, 51 B.R. 521, 524 (Bankr. E.D. Tenn. 1985). This was not the situation in the case at bar. Regions Bank's Deed of Trust contained an explicit provision for assignment of rents, which it enforced in good faith following proper notice and the mortgagor's subsequent failure to cure the default. Regardless of any lack of contractual privity, the Property purchased by Mr. Higdon at the foreclosure sale is subject to Regions Bank's security interest in the hands of any subsequent purchaser. We conclude that the trial court did not err in holding that Mr. Higdon was liable to Regions Bank for the payment of rent pursuant to a Deed of Trust to which Mr. Higdon was not a direct party.

## V. CONCLUSION

The judgment of the trial court is affirmed and this cause is remanded for collection of the costs below. Costs on appeal are taxed to the appellant, Jon Higdon.

_____
JOHN W. McCLARTY, JUDGE

-10-